UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ERIN GURSSLIN,

                            Plaintiff,

      vs.

THE CITY OF ROCHESTER, a municipal entity,
POLICE OFFICER JEREMY NELLIST, POLICE
OFFICER JOSHUA KELLY, COMMANDER FABIAN
RIVERA, LIEUTENANT AARON SPRINGER,

                        Defendants.

Case No. 20-cv-6508
(EAW)(MJP)

---

**MEMORANDUM OF LAW IN REPLY AND IN FURTHER SUPPORT OF**

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...........................................................................................................ii

PRELIMINARY STATEMENT.....................................................................................................1

ARGUMENT ...................................................................................................................................1

I.      TRANSFERRED INTENT DOES NOT CREATE ANY GENUINE DISPUTE REGARDING HER SEIZURE, SO THE COURT SHOULD ENTER SUMMARY JUDGMENT.....................................................................................................................1

II.     SUMMARY JUDGMENT AND QUALIFIED IMMUNITY FOR DEFENDANTS ON PLAITNIFF'S SEIZURE OF PROPERTY CLAIMARE APPROPRIATE AND WARRANTED BASED ON CASE LAW...............................2

        A.    STANDING CANNOT BE WAIVED AND THE COURT MUST ADDRESS IT........................2

        B.    COLLOQUIAL TERMS ARE NOT DETERMINISTIC OF LEGAL TERMS.............................2

        C.    THE OFFICERS EFFECTUATED A REASONABLE SEIZURE.............................................3

              1.    Courts determine the reasonableness in light of facts confronting the officers at the time. ..................................................................................3

              2.    Plaintiff relies solely on her proposed expert regarding some factors. .........4

              3.    Only material facts create a genuine dispute for the jury.............................4

III.    DEFENDANTS SPRINGER AND RIVERA'S ALLEGED FAILURE TO SUPERVISE IS A THEORY WITHOUT SUBSTANCE, SO SUMMARY JUDGMENT IS STILL WARRANTED. .....................................................................5

        A.    PLAINTIFF'S CASE LAW IS INAPPLICABLE................................................................5

        B.    PLAINTIFF DOES NOT IDENTIFY ANY OMITTED ACTION OR BEHAVIOR ......................6

IV.     THE COURT MUST ENTER SUMMARY JUDGMENT FOR DEFENDANTS AS TO MUNICIPAL LIABILITY FOR THE DOG SEIZURE. ...................................................................................................................6

        A.    ONLY CONSTITUTIONAL VIOLATIONS SUPPORT MUNICIPAL LIABILITY....................6

        B.    PLAINTIFF HAS NOT PROVIDED SUFFICIENT EVIDENCE OF AN UNWRITTEN POLICY OR CUSTOM. ..........................................................................................7

        C.    THE CITY IS NOT DELIBERATELY INDIFFERENT TO THE RIGHTS OF CITY RESIDENTS. ........................................................................................................7

              1.    Plaintiff fails to identify any deficiencies that might cause constitutional violations under a failure to train theory. ...........................................7

              2.    Plaintiff cannot establish a genuine dispute of material fact to preclude summary judgment regarding failure to supervise or discipline......................9

CONCLUSION ..............................................................................................................................10

## PRELIMINARY STATEMENT

Plaintiff asserts many things with a noticeable dearth of citations to case law or evidence. Defendants have made efforts to correct these misrepresentations and clarify obfuscations herein.

## ARGUMENT

### I. TRANSFERRED INTENT DOES NOT CREATE ANY GENUINE DISPUTE REGARDING HER SEIZURE, SO THE COURT SHOULD ENTER SUMMARY JUDGMENT.

Plaintiff neither claims that (she believed that) she was not free to leave, nor refutes Defendants' assertions that she never submitted to any authority. *U.S. v. Mendenhall*, 446 U.S. 544, 554 (1980); ECF 114-1, pg. 9[1]. She instead relies on "transferred intent" to establish that the officers' intent to harm a [first] person applies to a second person [her], who is unintentionally harmed. ECF 117, pgs. 8-9.

Plaintiff cited one case that has "recognized" the principle of transferred intent (ECF 117, pg. 9)—but that case only acknowledged the possibility of such a theory without relying on it in its holding (*Hodge v. City of New York*, no. 19-cv-2474, 2019 WL 1455170, at *2, fn.2 (S.D.N.Y. April 1, 2019)). Plaintiff also failed to address why the Court should follow that one case from the Southern District of New York [*Hodge*] instead of the Second Circuit in *Medeiros v. O'Connell* (150 F.3d 164, 166 (2d Cir. 1998)). Plaintiff also declines to distinguish *Hodge* from *Cox v. Village of Pleasantville* (271 F.Supp.3d 591, 603-606 (S.D.N.Y. 2017)) in which the Southern District followed *Medeiros* in 2017.

Even assuming, *arguendo*, that this criminal and tort principle of transferred intent applied to seizures, the present lawsuit does not deal with an initial intent to harm *a person*; this involves force on *personal property*, a dog. Plaintiff cites no precedent to establish that intent may transfer

---

[1] Defendants use the page numbers in the ECF header.

from personal property to persons or that she was also injured, which are both elements of transferred intent. Since Plaintiff cannot satisfy the Second Circuit's requirement of specific intent to seize a person (*Medeiros*, 150 F.3d at 168), the Court should enter summary judgment on Plaintiff's claim of seizure of her person.

## II.    SUMMARY JUDGMENT AND QUALIFIED IMMUNITY FOR DEFENDANTS ON PLAINTIFF'S SEIZURE OF PROPERTY CLAIM ARE APPROPRIATE AND WARRANTED BASED ON CASE LAW.

### A.    STANDING CANNOT BE WAIVED AND THE COURT MUST ADDRESS IT.

Defendants have not waived the standing issue through its omission from their answer. "[S]tanding is an essential element of jurisdiction" and " it is well-settled that issues going to this court's subject matter jurisdiction can never be waived." *Charts v. Nationwide Mut. Ins. Co.*, 300 B.R. 552, 556 (D. Conn. 2003)(internal quotations and citations omitted); *Phoenix Light SF Ltd. v. Bank of New York Mellon*, No. 14-cv-10104, 2020 WL 2950799, at *1 (S.D.N.Y. June 3, 2020). The Court must address any absence of or limit to its jurisdiction by determining whether Plaintiff has standing to bring a claim of seizure of a dog she fostered.

### B.    COLLOQUIAL TERMS ARE NOT DETERMINISTIC OF LEGAL TERMS.

Plaintiff declined to provide case law defining possessory interest, and instead inappropriately conflates colloquial ownership with legal possessory interest. Plaintiff's Opposition, ECF 117, pg. 9. Ms. Beyea states that "[b]ecause Erin Gursslin was responsible for the day-to-care of Nina, had possession of Nina for over two years, and had the right of first refusal to adopt Nina, *I* would consider her to be Nina's 'owner' *as that term is commonly understood*." ECF 117-3, Beyea Decl. ¶ 9 (emphasis added). Mr. Beyea explicitly speaks for only herself and about ownership colloquially. (It is furthermore telling that Plaintiff relies on Ms. Beyea's Declaration, instead of her own statements that she owned the dog.) Plaintiff also fails to address

2

that New York State Law distinguishes between "owners" and "owners of record" (NYS AGRIC. & MKTS. § 108(15 – 16)), and that only "owners of record" possess the ability to redeem a dog confiscated by animal control officers. NYS AGRIC. & MKTS. § 117(1-a), 117(6), 117 (4).

### C.    THE OFFICERS EFFECTUATED A REASONABLE SEIZURE.

Plaintiff urges the Court to reject summary judgment on multiple inappropriate bases—all of which the Court should reject.

#### 1.    Courts determine reasonableness in light of facts confronting the officers at the time.

Plaintiff suggests that the Court take into consideration facts that were unknown to the officers—in other words, facts gleaned from hindsight—in determining what was reasonable. The Court should clearly not, as that would be inconsistent with U.S. Supreme Court precedent. Reasonableness is an objective standard based on the "the facts and circumstances confronting [the officers]," "rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396-397 (1989).

The Court should not consider Plaintiff's factors, because Plaintiff (like her purported expert) has not shown that the officers knew or could have known or seen the dog's deformity (it was before dawn and dark (Plaintiff Tr. 43:25; Nellist Tr. 101:2-11)), the additional car in the driveway (where was it parked?), or the light from the house (were there rear-facing windows?). See e.g., Exhibit t V, Crosby Dempsey-Cox ("DC") DC Depo. Tr. 46:15 - 49:21; Exhibit Y, Crosby Gursslin "G") Depo. Tr. 57:21-25.

Regarding the Buffalo Police Department ("BPD"), Defendants first reject that BPD is an "accepted standard of police conduct," as only Plaintiff's conclusory statements support that contention. ECF 117, pg. 17. Second, Plaintiff again asks the Court to review the officers' actions based on hindsight. Neither officer knew a person was present or near the charging dog (ECF 114-

3

5, Kelly Tr. 130:13-15, 134:21 - 135:2; ECF 114-6, Nellist Tr. 104:21 - 105:4; 108:5-16), so it cannot be said that they departed from BPD's policy as Plaintiff claims (ECF 117, pg. 17). Defendants also reject Plaintiff's unsupported notion that Officer Nellist and Sgt. Kelly did not consider "potential collateral risks" of discharging their firearm. *Id.*

      2.      <u>Plaintiff relies solely on her proposed expert regarding some factors.</u>

Plaintiff relies solely on her proposed expert Crosby to support her view that (1) the officers were trespassing and/or present without any lawful basis at the time of the shooting (ECF 117, pg. 14, points 1 and 6), (2) non-lethal means were available (*id.* at point 4), and (3) officers failed to conduct an adequate scout (ECF 117, pg. 15, at point 7). When the Court determines that Mr. Crosby is ineligible to opine as an expert in these areas, the Court should ignore these points as baseless and unsupported by admissible evidence.

      3.      <u>Only material facts create a genuine dispute for the jury.</u>

Plaintiff outlines multiple facts that are irrelevant and immaterial to whether or not the officers effectuated a reasonable seizure, and then portrays other facts as undermining the credibility of the officers. The Court should ignore the entire section. ECF 117, pg. 15, point 2.

Plaintiff baselessly assails the officers' credibility for not seeing lights on in the house, not hearing Ms. Gursslin, or noticing an additional car in the driveway, even though Plaintiff did not establish that officers *could* have seen these things. See e.g., Crosby DC Depo. Tr. 46:15 - 49:21; Crosby G Depo. Tr. 57:21-25. More importantly, an extra car in the driveway and illuminated lights are not material facts in the totality of circumstances determining reasonableness of a seizure. Plaintiff has not cited any cases that consider these factors or explained their relevance.

Defendants also note Plaintiff's misconstrual of the facts, in order to create a dispute where none exists. Both officers stated that they did not see or hear Ms. Gursslin (ECF 114-5, Kelly Tr.

4

129:14-18, 130:13-18, 134:21 - 135:2; ECF 114-6, Nellist Tr. 104:8-25, 108:9-16), which is not the same as saying that Ms. Gursslin was not speaking or calling her dog. That officers could not hear Plaintiff could also be attributed to the softness of Plaintiff's voice, or the distance between Plaintiff and the officers, as Plaintiff Gursslin did not see the officers either (ECF 114-4, Plaintiff Tr. 51:9 - 52:23).

## III.  DEFENDANTS SPRINGER AND RIVERA'S ALLEGED FAILURE TO SUPERVISE IS A THEORY WITHOUT SUBSTANCE, SO SUMMARY JUDGMENT IS STILL WARRANTED.

### A.  PLAINTIFF'S CASE LAW IS INAPPLICABLE.

The Court should reject both cases proffered by Plaintiff: *Birch v. Town of Milford* and *Terebesi v. Torreso*. ECF 117, pgs. 18-21.

Plaintiff quotes *Terebesi* (ECF 117, pg. 18), because it holds that "a 'direct participant' [in a constitutional violation] includes a person who authorizes, orders, or helps others to do the unlawful acts, even if he or she does not commit the acts personally." *Terebesi v. Torreso*, 764 F.3d 217, 234 (2d Cir. 2014). *Terebesi,* however, predates *Tangreti v. Bachmann* referenced by Defendants (ECF 114-1, pg. 21 of 33). The Second Circuit's *Tangreti* decision was necessary, because the U.S. Supreme Court's decision in *Ashcroft v. Iqbal* (556 U.S. 662 (2009)) "cast doubt on the continued viability of the special standards for supervisory liability" previously announced by the Second Circuit. *Tangreti,* 983 F.3d 609, 618 (2d Cir. 2020). In *Tangerti*, the Second Circuit reviewed five categories that previously established liability of a supervisory official, including a supervisor's failure to remedy known violations, gross negligence in supervision, and failures to act on knowledge of ongoing unconstitutional actions (983 F.3d at 616)—and then rejected those categories by joining other circuits that there is no "special rule" for supervisory liability (983 F.3d at 618). A plaintiff must prove the same for supervisors as for "anyone else," i.e., the government

5

official's own actions violated the Constitution (983 F.3d at 618)—which Plaintiff has not done. *Terebesi* does not accurately reflect the law in the Second Circuit on supervisory liability.

The district court in *Birch v. Town of Milford* cites *Terebesi v. Torreso*, but does so within a discussion of *failure to intervene liability*. *Birch*, No. 20-cv-1790, 2023 WL 4684720, at \*26-27 (D. Conn. July 21, 2023), *appeal dismissed*, No. 23-1153, 2024 WL 3083385 (2d Cir. June 21, 2024). Page twenty-six, which is cited by Plaintiff (ECF 117, pg. 19), falls within section II(B)(1)(iii)(b) of the district court's opinion, which is a part of the discussion of "Mr. Birch's fabrication of evidence claims against [supervisor Sergeant Acker that] center around his alleged failure to intervene during the alleged fabrication of two pieces of evidence" in section II(B)(1). *Birch,* 2023 WL 4684720, at \*20, 26. Failure to intervene liability is distinct from the supervisory liability at issue in this matter, so the Court should not rely on *Birch*, as urged by Plaintiff.

### B.   PLAINTIFF DOES NOT IDENTIFY ANY OMITTED ACTION OR BEHAVIOR.

If the Court opts to entertain Plaintiff's reliance on *Birch*, Defendants note that Plaintiff argues—again without any specifics—that Defendants Rivera and Springer failed to both properly plan the SWAT operation (and specifically for potential risks) (ECF 117, pgs. 19-20) and ensure the officers conducted a proper scout. Plaintiff asserts that the scout conducted by Sgt. Kelly was deficient and improper—without identifying what was lacking (*id.* at pgs. 20-21).

## IV.   THE COURT MUST ENTER SUMMARY JUDGMENT FOR DEFENDANTS AS TO MUNICIPAL LIABILITY FOR THE DOG SEIZURE.

### A.   ONLY CONSTITUTIONAL VIOLATIONS SUPPORT MUNICIPAL LIABILITY.

Plaintiff misstates Defendants argument. ECF 117, pg. 21-22. Qualified immunity does not mean a constitutional violation did not occur; qualified immunity means that defendants are immune from liability from any constitutional violation that might exist. When, as here, there was no constitutional violation, municipal liability fails.

In the same vein, Defendants note that only Fourth Amendment violations—here unlawful seizures—may cause municipal liability. Both parties have utilized "firearm discharges" and/or "shooting at dogs" in their papers, which misstates the issue. Plaintiff mentions the number of dogs that officers *shot at* (ECF 117, pg. 23 of 31) and the use of lethal force on dogs generally (*id.* at 24)—when only the number of dogs killed is relevant. Shooting *at* or *towards* a dog is not a constitutional violation that leads to municipal liability.

### B. PLAINTIFF HAS NOT PROVIDED SUFFICIENT EVIDENCE OF AN UNWRITTEN POLICY OR CUSTOM.

In her opposition, Plaintiff uses statistics for the entire Rochester Police Department ("RPD") when this lawsuit is only about dog shootings during SWAT operations. ECF 117, pg. 23; ECF 114-03, Complaint, ¶¶ 3-13, 89-96. Furthermore, neither the Constitution nor Fourth Amendment jurisprudence requires police officers to use non-lethal force or the least amount of force possible on personal property. It is, therefore, immaterial that RPD permits officers to use their firearms when less lethal options are available. ECF 117, pg. 24.

### C. THE CITY IS NOT DELIBERATELY INDIFFERENT TO THE RIGHTS OF CITY RESIDENTS.

#### 1. Plaintiff fails to identify any deficiencies that might cause constitutional violations under a failure to train theory.

Plaintiff does not clearly identify the purported deficiency that led to a constitutional violation (ECF 117, pgs. 24-28), as required to defeat summary judgment (*Ellis v. Washington*, 409 F. Supp. 3d 148, 154 (W.D.N.Y. 2019)). Defendants therefore treat Plaintiff's arguments as the purported deficiencies, even though none of these deficiencies lead to deliberate indifference.

First, Defendants disagree that Mr. DiDomenico stated his training's duration was "insufficient to properly educate officers on the complexities of canine behavior and how to handle encounters with dogs without resorting to lethal force." ECF 117, pg. 25. But even if he did, those

7

beliefs are irrelevant and immaterial. The Fourth Amendment does not demand police officers be experts on dog behavior or use non-lethal force in dog encounters. The Fourth Amendment requires officers act reasonably when confronted with a recognizably aggressive dog. *Carroll*, 712 F.3d at 651-52. The duration of the City's training is sufficient to accomplish that.

Second, Plaintiff's purported expert asserts that the absence of hands-on practice and interactive components meant officers could not "internalize" and "effectively apply" the techniques taught. ECF 117, pg. 25. Plaintiff relies only on Mr. Crosby's report, which the Court should reject as inadmissible evidence. Mr. Crosby is not an expert on teaching and pedagogy (Exh. V, Crosby DC Tr. 19:9 - 21:2) and therefore, is not equipped to provide expert opinion on the instructional techniques required for students to master certain material. Moreover, imperfect training and differing instructional formats do not demonstrate deliberate indifference. *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007); *Connick v. Thompson*, 563 U.S. 51, 68 (2011).

Third, Plaintiff attacks the qualifications of Mr. DiDomenico (ECF 117, pg. 26), but does not address the qualifications of the other two individuals who helped develop the content of the training: Monroe County Sheriff's Deputy Sheriff Dave Phelps and the Humane Society/Lollypop Farm Behaviorist Rebecca Lohnes (ECF 114-18, DiDomnico Tr. 27:14-25, 29:9-14). Plaintiff's purported expert believes Mr. DiDomenico unequipped to develop a comprehensive training on dog behavior or dog training (ECF 117, pg. 26) and appears not to understand that RPD neither needs nor seeks to train its officers comprehensively on dog behavior and dog training. To repeat, the Fourth Amendment does not demand police officers be experts on dog behavior or use non-lethal force in dog encounters, so it is does demonstrate deliberate indifference to constitutional rights that the City declines to train its officers to become experts in dog behavior.

Lastly, Plaintiff critiques the City for not utilizing free and "readily available, comprehensive training resources" (ECF 117, pgs. 26-27) when the DiDomenico-Phelps-Lohones team *did* incorporate one of the free, available training resources identified by Plaintiff's proposed expert James Crosby: U.S. Department of Justice ("US DOJ") Office of Community Oriented Policing Services ("COPS") booklet: "It's the Problem of Dog-Related Incidents and Encounters" (ECF 114-18, DiDomenico Tr. 32:16 - 34:19, 36:9-13); Exhibit V, Crosby DC Tr. 91:5-92:24. In addition to this purported deficiency being untrue, it is also fails to demonstrate deliberate indifference, because urging different training is insufficient. Notably, Plaintiff does not address the other training provided by RPD to SWAT officers identified by Defendants in their motion. ECF 114-1, pg. 28 of 33.

2.    <u>Plaintiff cannot establish a genuine dispute of material fact to preclude summary judgment regarding failure to supervise or discipline.</u>

Despite the City's allegedly "long history of troubling dogs shootings by RPD officers" (ECF 117, pg. 28), Plaintiff describes only one incident in which an RPD officer should have been disciplined or better supervised: Officer Pinckney on August 11, 2019 (ECF 117, pg. 30 of 31), which does not establish deliberate indifference.

The Pinckney incident does not involve a SWAT operation (the focus of this lawsuit) and occurred more than eleven months after the September 6, 2018 incident underlying the *Gursslin* lawsuit. A pattern of similar constitutional violations provides notice to policymakers of a deficient training program. *Connick v. Thompson*, 563 U.S. 51, 63 (2011). A municipality cannot be said to be deliberately indifferent if a pattern and notice occurred *after* the alleged violation. *Id.*

Plaintiff also cites to deposition testimony from another non-SWAT source, Sgt. Daniel Zimmerman, who stated that he shot twenty-five dogs from 1988 to 2009. ECF 117, pg. 30; ECF 117-21 (Zimmerman transcript). First, the Court should not consider this testimony, because this

deposition was taken by Plaintiff's counsel in *Vann v. City of Rochester*, 18-cv-6464 (not this matter) (ECF 117-21, pg. 1), Defendants' counsel was not present at the deposition (ECF 117-21, pg. 2), and this was not included in Plaintiff's supplemental Rule 26 disclosures sent on the final day of discovery, October 18, 2023 (Exhibit W, Jones Decl. ¶ 4). Second, the latest of Zimmerman's dog shootings occurred more than eight years[2] before the incident underlying the *Gursslin* lawsuit, making it too temporally distant to establish deliberate indifference. Sgt. Zimmerman's testimony is included only for emotional value and not for legal persuasion.

A perfectly reasonable explanation exists for why the City has not changed its training or policies regarding dog encounters or why no officer has been disciplined or retrained after shooting a dog (ECF 117, pg. 29-30): there is no need to. The City's training is adequate and its officers have acted lawfully, appropriately, and reasonably.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for partial summary judgment on Plaintiff's unlawful seizure claims and municipal liability, and award Defendants such other relief as the Court deems proper.

Date: August 26, 2024

PATRICK BEATH
CORPORATION COUNSEL

By: _____
Peachie L. Jones, Esq., Of Counsel
*Attorneys for Defendants*
30 Church Street, Room 400A
Rochester, NY 14614
(585) 428-7992
Peachie.Jones@CityofRochester.gov

---

[2] Eight years and eight months lapsed between December 31, 2009 and September 6, 2018, the date of the incident in *Gursslin*.

10