Exhibit V

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
CHERYL COX,

        Plaintiff,

          Case No. 6:22-cv-6207(FPG)(MJP)

v.

CITY OF ROCHESTER, DAKOTA VANBREDERODE,

        Defendants.
-----------------------------------------------------
CHARLES DEMPSEY, Individually, and L.D., by her
father and natural guardian, CHARLES DEMPSEY,

        Plaintiff,

v.

THE CITY OF ROCHESTER, a municipal entity, JAVIER
ALGARIN, ADAM GORMAN, "JOHN DOE" RPD OFFICER
RESPONSIBLE FOR TRAINING JAVIER ALGARIN,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

  Remote Deposition Upon Oral Examination Of:

         James W. Crosby, PhD


 Date:        June 12, 2024

 Time:        12:00 p.m.


 Reported By:  CHRISTINE VIGNA

            Alliance Court Reporting, Inc.

            109 South Union Street, Suite 400

            Rochester, New York 14607



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

A P P E A R A N C E S

Appearing Remotely on Behalf of Plaintiffs:

Elliot D. Shields, Esq.

 Roth & Roth LLP

 192 Lexington Avenue, Suite 802

 New York, New York  10016

 eshields@rothandrothlaw.com

Appearing Remotely on Behalf of Defendants:

Peachie L. Jones, Esq.

 City of Rochester Law Department

 City Hall, Room 400A

 30 Church Street

 Rochester, New York  14614

 peachie.jones@cityofrochester.gov

   *  *  *



ALLIANCE
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

S T I P U L A T I O N S

WEDNESDAY, JUNE 12, 2024;

(Proceedings in the above-titled matter commencing at 12:04 p.m.)

\*      \*      \*

IT IS HEREBY STIPULATED by and between the attorneys for the respective parties that this deposition may be taken by the Plaintiff at this time pursuant to notice;

IT IS FURTHER STIPULATED, that all objections except as to the form of the questions and responsiveness of the answers, be reserved until the time of the trial;

IT IS FURTHER STIPULATED, that pursuant to Federal Rules of Civil Procedure 30(e)(1) the witness requests to review the transcript and make any corrections to same before any Notary Public;

IT IS FURTHER STIPULATED, that if the original deposition has not been duly signed by the witness and returned to the attorney taking the deposition by the time



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

4

S T I P U L A T I O N S

of trial or any hearing in this cause, a certified transcript of the deposition may be used as though it were the original;

IT IS FURTHER STIPULATED, that the attorneys for the parties are individually responsible for their certified transcript charge, including any expedite or other related production charges;

AND IT IS FURTHER STIPULATED, that the Notary Public, CHRISTINE VIGNA, may administer the oath to the witness.

*     *     *

THE COURT REPORTER:  Will the attorneys participating in this matter acknowledge that I am not physically present with the witness and that I will be stenographically reporting this from a remote location;

And will you also verify that the witness is, in fact, James W. Crosby, PhD;

In addition will you stipulate that in lieu of an oath administered in person, I will administer the oath remotely under penalty of perjury to the witness



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

JAMES W. CROSBY, PHD - BY MS. JONES

regardless of the witness' location;

And finally, that there will be no objection to the admissibility of this transcript based on proceeding in this way starting with counsel for the plaintiffs?

MR. SHIELDS:  Yes.  We so stipulate. And I can verify that the individual on the screen is in fact James Crosby.

MS. JONES:  The defendants also stipulate.

JAMES W. CROSBY, PHD,

called herein as a witness, first being sworn, testified as follows:

EXAMINATION BY MS. JONES:

Q.   Good afternoon.  My name is Peachie Jones.  I'm an attorney with the City of Rochester. We're here so I can take your deposition.  We're on Zoom.  Well, actually, I say this to all the witnesses that I ask questions or depose.

Will you tell me if you don't understand any of the questions I ask today?

A.   Absolutely.

Q.   Will you tell me if you don't hear all of my questions?



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

JAMES W. CROSBY, PHD - BY MS. JONES

street crimes unit that was operated within the urban core.  We addressed street-level crime such as drug sales, search warrants.  Also did stings for robbery decoy work, stakeouts for various things.  That was not part of or associated with the SWAT team.  I've never been a member of a SWAT team, nor a supervisor over a SWAT team.

Q.   On what subject matters do you consider yourself to be qualified to testify as an expert witness?

A.   The subject matters that I consider are based on what I've been accepted by local, state and federal courts across the US and a couple of other countries on K-9 aggression, the behavior of domestic dogs, dog bites, dog bite investigations, dangerous dog investigations, the use of force against animals, particularly against domestic K-9s.  The investigation of fatal dog attacks on human beings, the investigation of dog bites on human beings.  Those were both the subjects of my master's and my PhD work.

I've been accepted on proper animal control policies, procedures and practices having been not only a certified animal control officer but



JAMES W. CROSBY, PHD - BY MS. JONES

the chief or director of two separate animal control agencies.

I have been accepted as an expert on police procedures and practices insofar as they apply to encounters with animals and the use of force specifically regarding animals, usually domestic K-9s.

Q.   Are there any other subjects that you consider yourself qualified to be -- I'm sorry.

Are there other subjects that you consider yourself qualified to be an expert witness on that you haven't been -- or have yet to be accepted as an expert witness in a formal litigation matter?

A.   In other countries, I've been accepted as -- and in this country -- as an expert on -- as part of the animal control in shelter operations and shelter management.  I forgot to include that before.

As far as considering myself an expert in something else that I have not been accepted as, I would -- I would say probably not. If you had a specific field, then I could answer that.  But in general, you know, it's a pretty



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

JAMES W. CROSBY, PHD - BY MS. JONES

extensive list.

Q.    Can you explain what proper animal control procedures entail?

A.    Yes.  The -- the operation of an animal control agency which usually involves not only a -- the part of picking up stray animals and so forth, but enforcement of city or county codes regarding animals and their proper care and management, the state laws regarding animal care and management, especially regarding cruelty and neglect.  Dangerous dogs, dangerous dog determinations.  The operation of the physical shelter itself, including standards for humane and healthy keeping of animals.

The oversight of the veterinary staff, both veterinarians and veterinary technicians within the shelter environment.  The oversight of personnel issues within those agencies.  Pretty much everything to do with running an animal control municipal or county animal control or animal services agency.

Q.    What municipality or states have you been an expert witness on these animal control procedures and operations?



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

JAMES W. CROSBY, PHD - BY MS. JONES
remember or reviewed?

A.    I don't remember specifically at this point.  I know that they were not based on a small sample, you know, 2, 3, 5 cases.  They were in the most part studies that -- it had enough of a sample to be statistically significant, which is usually a threshold of around 30-ish according to normal statistical analysis.

Q.    So you're saying it had at least 30 or around 30?

A.    The general standard for statistically acceptable is around 30.  They'd like to see more when you're doing analysis.  But I want to say that these reports were probably in the area of 30 cases, plus or minus a little bit.

Again, they weren't just simply one or two cases.  More than I've physically seen.

Q.    Do you remember how many studies you've reviewed in the past about uses of Tasers on dogs?

A.    Probably three or four.

Q.    Were these studies recent -- correction.

What time frame were these studies



JAMES W. CROSBY, PHD - BY MS. JONES

produced or published?

A.    They were certainly within the last -- the last ten years.  When I started my PhD, my research was going to be focused on use of force by police against animals.  But then for a couple of reasons after about the first year, I shifted over to concentrating on the fatal dog attacks.  So these would have been studies that I ran into.  I don't remember the dates of the authoring, but would have run into in the 2017, 2018 time frame while I was focusing on the research involved in that particular field.

MS. JONES:  Okay.  I'm at a stopping point.  We can take a break.

MR. SHIELDS:  Two minutes?  Five minutes?  Say five minutes?

THE WITNESS:  That will be fine.

MS. JONES:  Sounds good.

(The proceedings recessed at 1:14 p.m.)

(The proceedings reconvened at 1:22 p.m.; appearances as before noted.)

JAMES W. CROSBY, PHD, resumes;

CONTINUING EXAMINATION BY MS. JONES:

Q.    Mr. Crosby, I just want to remind you



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

48

JAMES W. CROSBY, PHD - BY MS. JONES

about the guidelines I had at the beginning to make sure that you wait until I finish and tell me if you don't understand or don't hear my question. Because, of course, you promised to tell the truth so we want to make sure you hear the question, understand them and that what you're saying is correct.

A.   Understood.

Q.   I have a few questions about pepper spray.  Do you consider pepper spray or OC spray, as you said earlier, to be an effective non-lethal option on aggressive dogs?

A.   Yes.

Q.   And what's the basis of that belief or opinion?

A.   There are several bases of it. Number 1 is personal experience where I have deployed during my law enforcement career pepper spray -- not mace, but pepper spray against dogs.  I have also used it and had -- my officers have used in the animal control field during my time there.

There have been a number of studies on -- the easiest one to reach back to is the study that was done by the Baltimore Police Department a



JAMES W. CROSBY, PHD - BY MS. JONES

few years back where they evaluated the -- I believe it was a total of 20 cases where their officers had to deploy defensive measures against actively charging offensively behaving dogs, domestic dogs.

And in those 20 cases that they studied, in 19 of them, the application of the OC spray to the dog's face immediately stopped the dog and made them withdraw.  In the 20th case, it took two squirts basically by the officer.  The officer squirted the dog the first time, but it was quite close.  And the dog managed to engage very slightly with the officer's pants tearing a small hole in them.  But the officer gave another blast and that dog did immediately disengage from the officer.

I've also seen pepper spray used in a number of cases.  There is, for instance, a video of the -- that I was provided by the Chief of the Meridian, Idaho Police Department that showed one of his officers being charged by two medium-sized to large dogs and him using various non-lethal defensive tools including pepper spray.  And the immediate reaction of the dog to the pepper spray directly mirrored my own experience and the experience of others that I'm aware of that have



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

JAMES W. CROSBY, PHD - BY MS. JONES

And none of the officers that have been deposed remember anything in particular about that training.  That's why you give quizzes and exams to make sure that at least the minimum information is retained at least long enough to take the test.

Q.   So you use the term deliberate indifference in your report.  When you use the term deliberate indifference or being deliberately indifferent, are you referring to the legal term that's used regarding municipal liability in constitutional cases?

MR. SHIELDS:  Objection to form.

A.   My understanding of deliberate indifference was informed by discussions with Mr. Shields.  But as I have not been through law school, I don't have a formal education in all of the aspects of that concept.  So I'm using it in the legal term, but more from an educated amateur as far as I can't go back and argue and give you the history of the establishment of that -- of that concept.

I can say that I do understand it as being the conduct of somebody who has been told,



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

JAMES W. CROSBY, PHD - BY MS. JONES

taught or informed what, how and proper methods of doing something and does not care and deliberately just does what they want despite the fact that they have been informed what they should be doing. That's my understanding.  I can't drill down into the -- the legal history of the term.

Q.   So a few times you refer to the city being deliberately indifferent.  So can you help me understand what -- or tell me what your understanding of deliberate indifference is when it comes to a municipality or a city?

A.   Yes.  My understanding as it applies to a municipality or city or state or whatever organization you're talking about is that the entity knows that there is a problem or a deficit or that its members or employees are doing something that is incorrect, improper, unreasonable, however you want to define it, and yet the -- the municipality or organization despite knowing or despite the fact that they should have known that their employees or staff or whatever are doing this, they choose to look away and to not enforce their own policies and procedures.

And, for instance, if they know an



**ALLIANCE**
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920