Revised
Exhibit M

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
ERIN GURSSLIN,

     Plaintiff,

       Case No.  20-cv-6508(EAW)(MJP)

v.

THE CITY OF ROCHESTER, a municipal entity, POLICE OFFICER JEREMY NELLIST, POLICE OFFICER JOSHUA KELLY, COMMANDER FABIAN RIVERA, LIEUTENANT AARON SPRINGER,

     Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


 Remote Deposition Upon Oral Examination Of:

      James W. Crosby, PhD




 Date:     June 18, 2024

 Time:     10:00 a.m.




 Reported By:  CHRISTINE VIGNA

       Alliance Court Reporting, Inc.

       109 South Union Street, Suite 400

       Rochester, New York 14607



**ALLIANCE**
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

2

A P P E A R A N C E S

Appearing Remotely on Behalf of Plaintiff:

Elliot D. Shields, Esq.

Roth & Roth LLP

192 Lexington Avenue, Suite 802

New York, New York  10016

eshields@rothandrothlaw.com


Appearing Remotely on Behalf of Defendants:

Peachie L. Jones, Esq.

City of Rochester Law Department

City Hall, Room 400A

30 Church Street

Rochester, New York  14614

peachie.jones@cityofrochester.gov

*     *     *



ALLIANCE
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

S T I P U L A T I O N S

TUESDAY, JUNE 18, 2024;

(Proceedings in the above-titled matter commencing at 10:09 a.m.)

*    *    *

IT IS HEREBY STIPULATED by and between the attorneys for the respective parties that this deposition may be taken by the Defendant at this time pursuant to notice;

IT IS FURTHER STIPULATED, that all objections except as to the form of the questions and responsiveness of the answers, be reserved until the time of the trial;

IT IS FURTHER STIPULATED, that pursuant to Federal Rules of Civil Procedure 30(e)(1) the witness requests to review the transcript and make any corrections to same before any Notary Public;

IT IS FURTHER STIPULATED, that if the original deposition has not been duly signed by the witness and returned to the attorney taking the deposition by the time



ALLIANCE
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

4

S T I P U L A T I O N S

of trial or any hearing in this cause, a certified transcript of the deposition may be used as though it were the original;

IT IS FURTHER STIPULATED, that the attorneys for the parties are individually responsible for their certified transcript charge, including any expedite or other related production charges;

AND IT IS FURTHER STIPULATED, that the Notary Public, CHRISTINE VIGNA, may administer the oath to the witness.

*     *     *

THE COURT REPORTER:  Will the attorneys participating in this matter acknowledge that I am not physically present with the witness and that I will be stenographically reporting this from a remote location;

And will you also verify that the witness is, in fact, James W. Crosby, PhD;

In addition will you stipulate that in lieu of an oath administered in person, I will administer the oath remotely under penalty of perjury to the witness



5

JAMES W. CROSBY, PHD - BY MS. JONES

regardless of the witness' location;

And finally, that there will be no objection to the admissibility of this transcript based on proceeding in this way starting with counsel for the plaintiff?

MR. SHIELDS: Yes. So stipulated.

MS. JONES: Yes. Defendant also stipulates.

MR. SHIELDS: I have no follow-up questions from last time, so you can go ahead, Peachie.

MS. JONES: Okay. Great.

JAMES W. CROSBY, PHD, called herein as a witness, first being sworn, testified as follows:

EXAMINATION BY MS. JONES:

Q. Mr. Crosby, again my name is Peachie Jones. Just to remind you from last time around, will you please wait until I finish my question before you answer?

A. Yes.

Q. Will you tell me if you don't understand my question?

A. Yes.



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

JAMES W. CROSBY, PHD - BY MS. JONES of the very basic starter techniques that we talk about.

I've also taught it to animal control officers even though anybody who's been an animal control officer any length of time already knows that you use something to separate yourself from the dog.

Q.   So can you help me understand why if you teach officers to use barriers, why you feel the officers in the Gursslin case did not use the backpack as a barrier properly?

A.   Because they didn't use it as a barrier.  They threw it on the ground.  A barrier is something that -- like a backpack or a heavy coat or a trash can lid or a trash can or a piece of wood or anything that is available at hand, could be a branch of a tree with a bunch of leaves on the end, you hold it to be a -- hopefully a visual and perceived barrier to the dog to maintain distance. You don't throw things at the dog.

Q.   What's your definition of a barrier?

A.   A barrier is anything that prevents or slows the approach of one thing to another.  With dogs, we use visual barriers such as the fog out of



JAMES W. CROSBY, PHD - BY MS. JONES

a CO2 fire extinguisher.  We use visual barriers such as a piece of cloth or coat out in front.  We use physical barriers ranging from again trash can lids to backpacks to sticks to crutches to closing the gate.  A barrier is anything that is going to slow or impede an immediate quick contact with a perceived threat.

Q.   What's your definition of a shield?

A.   Well, a shield would be something that functions as a barrier between you and a perceived threat.  I mean, the police use shields. Watch old movies and you got people running around with swords and shields.  I think shields -- any object that's between -- that can be placed between you and again a perceived threat.

Q.   So is your concern or disagreement with their use of a bag solely that they dropped it on the ground and didn't hold it in front of them?

MR. SHIELDS:  Object to form.

A.   Yes.  If you hold it in front of them, would have kept them safe.  Because even if the dog bit, it would have bitten the closest object, the bag or backpack, whatever you want to call it, rifle bag.  That would have at least



JAMES W. CROSBY, PHD - BY MS. JONES

have been trained to use and that use of deadly force, whether it's with animals or others with humans, should be your last option, not your first.

Q.   Did the city incorporate any of the content or parts of the free and effective training such as the LEDET or from California POST into their training on dog encounters?

A.   I've looked at the DiDomenico training, both the original longer version and the shorter version that were supposed to be presented, I guess, as roll call or in-service.  And many of the same principles were included such as firearms are a last -- a last option and trying to avoid or shield oneself from an approaching dog is appropriate, using less and non-lethal means of force is not only appropriate, but desired.  So many of the basic -- the very basic principles that run through all of these trainings were there.

The officers, however, have testified that they didn't remember or incorporate any of that into their practices.

Q.   I believe in the prior deposition you said that you principally relied on the officers' deposition testimony in concluding that the city's



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

JAMES W. CROSBY, PHD - BY MS. JONES

training on dog encounters was subpar.  Am I remembering that correctly or did you rely on other things to support your opinion that the city failed to appropriately train its officers on dog encounters?

MR. SHIELDS:  Objection to form.

A.   It's a combination.  It's the officers' testimony coupled with the fact that they are not practicing those techniques, at least in the cases that I've directly examined here.  They're not practicing the techniques that we're taught in the training.

The training itself was very -- was relatively speaking very short, which is in itself a problem and fails -- fails to address enough information and techniques.  There was no indication that the training involved actually practicing any of these techniques, which for police training is very unusual.  Defensive tactics and firearms tactics are typically subject to repeated long-term training, many repetitions as opposed to just sitting in a classroom with a PowerPoint.

The animal encounter training in this case was -- was again not interactive.  It was not



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

81

JAMES W. CROSBY, PHD - BY MS. JONES

State of Louisiana.

So the last actual trial would have been 2019. Again, because the process -- the attorneys tend to settle out.

Q. I'm sorry. Can you spell the names in that St. Louis 2019 case?

A. Yes. That was the case where the settlement was $750,000 in favor of the plaintiff. The names were Zorich. That's Z-O-R-I-C-H versus Zavorka, Z-A-V-O-R-K-A, and the St. Louis County Police Department. And that was in St. Louis, Missouri.

Q. Thank you.

What good and accepted police practice states that training on dog encounters should last at least four hours?

A. In my experience -- and I wouldn't -- I wouldn't draw a hard line at four hours. I would say that teaching the subject adequately should not be tried or done in less than about four hours simply because of the volume of behavioral issues, use of less and non-lethal forces and the criteria one should consider when it is appropriate to use deadly force. That takes time.



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920