**Revised
Exhibit T**

CONFIDENTIAL

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
ERIN GURSSLIN,

       Plaintiff,

           Civil Action No. 20-cv-6508

v.

THE CITY OF ROCHESTER, A MUNICIPAL ENTITY, POLICE
OFFICER JEREMY NELLIST, POLICE OFFICER JOSHUA
KELLY, COMMANDER FABIAN RIVERA, LIEUTENANT AARON
SPRINGER,

       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Video-recorded Deposition Upon Oral Examination of:

          Sergeant Ryan J. Romig

Location:     Alliance Court Reporting, Inc.
            109 South Union Street, Suite 400
            Rochester, New York 14607

Date:         February 17, 2023

Time:         10:00 a.m.

Reported By:  CHRISTINE VIGNA

            Alliance Court Reporting, Inc.

            109 South Union Street, Suite 400

            Rochester, New York 14607



**ALLIANCE**
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920

Confidential

2

                    A P P E A R A N C E S

Appearing Remotely on Behalf of Plaintiff:

Elliot D. Shields, Esq.

     Roth & Roth LLP

     192 Lexington Avenue, Suite 802

     New York, New York 10016

     eshields@rothandrothlaw.com


Appearing on Behalf of Defendants:

Peachie L. Jones, Esq.

     City of Rochester Law Department

     City Hall, Room 400A

     30 Church Street

     Rochester, New York 14614

     peachie.jones@cityofrochester.gov


Also Present:

Kenneth Williamson, Videographer

     Alliance Court Reporting, Inc.

     109 South Union Street, Suite 400

     Rochester, New York  14607


                    *      *      *



Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

**4**

P R O C E E D I N G S

for their certified transcript charge, including any expedite or other related production charges;

AND IT IS FURTHER STIPULATED, that the Notary Public, CHRISTINE VIGNA, may administer the oath to the witness.

*    *    *

THE VIDEOGRAPHER:  We are on the record. The time is 10:20 a.m. on Friday, February -- excuse me -- Friday, February 17, 2023.  My name is Ken Williamson of Alliance Court Reporting located at 109 South Union Street, Rochester, New York.  Today we are located at Alliance Court Reporting.

We are about to begin the video-recorded deposition of Sergeant Ryan Romig in the matter of Erin Gursslin, Plaintiff versus The City of Rochester, a municipal entity, Police Officer Jeremy Nellist, Police Officer Joshua Kelly, Commander Fabian Rivera, Lieutenant Aaron Springer, Defendants.

Today's matter is being recorded on behalf of the Plaintiffs.  Counsel, please state your appearances for the record and please begin with the noticing attorney.

MR. SHIELDS:  Elliot Shields for the Plaintiff.



Confidential

5

SERGEANT RYAN J. ROMIG - BY MR. SHIELDS

MS. JONES:  Peachie Jones with the City of Rochester for all Defendants.

THE VIDEOGRAPHER:  Thank you, Counsel.

Our court reporter today is Christine Vigna, also with Alliance Court Reporting.

She will now swear in our witness.

SERGEANT RYAN J. ROMIG,

called herein as a witness, first being sworn,

testified as follows:

EXAMINATION BY MR. SHIELDS:

Q.  Good morning, Sergeant.

A.  Good morning.

Q.  My name is Elliot Shields.  I represent the Plaintiff in this case whose dog was shot and killed by several RPD officers on September 6, 2018. I'm going to ask you some questions today.

First, I'm just going to go over some ground rules for the deposition.  Will you tell me if you don't understand my question?

A.  Yes.

Q.  And will you tell me if you find my question to be confusing?

A.  Yes.

Q.  And will you tell me if I have assumed an



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

26

SERGEANT RYAN J. ROMIG - BY MR. SHIELDS

you use the 40-millimeter foam baton?

A.   That's a pretty broad question.

MS. JONES:   Yeah.   Objection.

A.   Do you want me to describe like every circumstance where we might use a foam baton?

Q.   Why don't you tell me the last time that you used the foam baton?

A.   The last time I did or the team did or?

Q.   That's a good question.

Let's say the last time the team did.

A.   So the last time we used it was just to break a window, so that's like "I use," breaking a second-story window to cause a diversion or a distraction.

So you'd use it on a person who is assaultive, combative.   If somebody was being assaultive toward other officers, you could potentially use it to try to gain compliance. Somebody with an edged weapon that you can't get close enough to put your hands on, you could use it to try to gain compliance, try to get them to drop the weapon from a distance.

And then we've used it on aggressive dogs to try to pacify aggressive dogs.   Those



Confidential

27

SERGEANT RYAN J. ROMIG - BY MR. SHIELDS

are just -- that's just a few examples.

Q.   Sure.

So tell me about using it against aggressive dogs.

A.   Sure.

So if a dog is -- if we have the opportunity to bring it up when we encounter a dog and it's safe to do so, we'll try to use it as a way to try to prevent to -- having to use deadly force on the animal.  So if you have a dog who's displaying the signs of an aggressive animal and it has not yet charged you, you can call up for the tool, less -- you'd say like less lethal up.  The 40-millimeter operator would come up.  And that way if the dog does start to charge, you can deploy that instead of deadly force to try to deter the dog as one last ditch effort.

Q.   How often does that happen?

A.   It's happened, since I've been on the team -- I can only speak to operations I was on that I have memory of and I have memory of that happening maybe three times.

Q.   Do you have to document that in some kind of report if you discharge the foam baton?



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

Confidential

32

SERGEANT RYAN J. ROMIG - BY MR. SHIELDS

qualifications courses to maintain proficiency in the weapons systems.

Q.   So as a member of the SWAT less lethal team, you get training four times a year?

A.   Yes.  Quarterly training in addition to our regular SWAT training, yes.

Q.   Okay.  And in addition to regular training that all RPD officers get?

A.   Yes.

Q.   Okay.  Is training on the use of the foam baton something that all RPD officers get or only members of the less lethal team?

A.   Only members of the less lethal team.

Q.   Okay.

A.   There are -- there's another special team -- excuse me -- in RPD called the mobile field force and some of them members -- some of their members also utilize that tool, but I'm -- I'm not a member of that team.  I don't know any of the specifics of it.

Q.   Okay.  So if you're not -- so basically to use the foam baton you have to get a special certification?

A.   You have to -- you have to be trained on



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

SERGEANT RYAN J. ROMIG - BY MR. SHIELDS

about dog behavior?

A.  I don't know if I'm conflating in my brain the in-service training or the academy.  So I know that I've learned about dog behavior, but I don't know if -- if I'm remembering it from the in-service or the academy.  I would imagine it's from the in-service which was much more recent.

Q.  Okay.  So since the academy -- and not talking about any SWAT training -- have you gotten any -- tell me all the training that you've received about interacting with dogs.

A.  There was an off-the-road in-service.  I don't remember what year it was.  Somebody from either animal control or the Humane Society came in and they talked about how to identify an aggressive dog based on their body posture, their body language.  They talked about, you know, some potential ways to try to keep the dog at bay.  That's really the most I remember about it --

Q.  Okay.

A.  -- so --

Q.  Was that training geared towards dealing with quote/unquote aggressive dogs?

A.  The parts I remember of it had to do with



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

SERGEANT RYAN J. ROMIG - BY MR. SHIELDS

identifying the body language of an animal, whether it be playful, scared, defensive, aggressive.  And then some ways to mitigate the risk if -- if the dog is being aggressive toward you.

I don't remember if they covered anything else as far as, you know, response to dogs. The -- that's all I remember about that in-service.

The only other kind of things that I remember is, in SWAT school when they talk about scouting, they talk about the signs that a dog might be living in a home.  So, you know, dog feces, doghouses, be aware of dog signs, fences, dog bowls, leashes, you know, the sort things to be on the lookout for when you're scouting a location that might be indicative of a dog being present.

Q.  Okay.  So I want to talk about the SWAT training separately in a minute.  But going back to training that you've received post-academy, did you receive any training about the things you just mentioned regarding scouting separate from your training with the SWAT team?

A.  I don't know if they covered that in the in-service.  I also know they sent out some roll call trainings, but I don't remember the details of them.



Confidential

91

SERGEANT RYAN J. ROMIG - BY MR. SHIELDS

Q.  Okay.  Let me pull that down.

Okay.  And can you tell me all the training you've received with SWAT about interacting with dogs?

A.  Well, there's the initial training on scouting that I already -- I mentioned where you learn about the signs that there might be a dog at the location.  We did a couple of trainings.

At some point during my SWAT career we started bringing a catchpole with us.  And we did an initial training on how to utilize that catchpole. And I know we've done at least one updated training on that, like a refresher training on that.

And then I attended that less lethal school that we've already discussed and they talked about utilizing less lethal tools to help pacify dogs in that school as well.

Q.  Okay.

A.  That was the National Tactical Officers Association.

Q.  Okay.  And that less lethal school, where was that training?

A.  That was in Pennsylvania outside of Scranton.  It was in maybe 2019 or 2018-ish.  It's an



Confidential

92

SERGEANT RYAN J. ROMIG - BY MR. SHIELDS

instructor-level certification for those different instruments that I was telling you about, the less lethal chemical munitions and noise flash diversion devices.

Q. Were you the only RPD officer that went or were there others?

A. There are -- there have been a bunch that have attended that training. I was the only one that went to that exact one, but there's a bunch that have attended the same training.

Q. Okay. And --

MS. JONES: Since it looks like we're going to talk about SWAT, can we mark this portion of the transcript as confidential beginning with the SWAT training about dogs? Thank you.

MR. SHIELDS: Sure.

Q. Now, did you get a certification from that training?

A. I did.

Q. Okay. Is that something that like would be in your PDS file or something?

A. I know I have a copy of the certification. I don't know if PDS does. And I know it expired in 2022 or something like that because I'm no longer



Confidential

93

SERGEANT RYAN J. ROMIG - BY MR. SHIELDS

considered an active instructor in that field.

Q. Okay. So it sounds like that certification lasts three or four years?

A. Something like that.

MS. JONES: Objection.

A. Yeah. I can't remember if it's three years or five years.

Q. Okay. And so tell me everything that you remember about the catchpole training.

A. Mostly it was about the functionality of the catchpole and when it would be appropriate to use the catchpole. That's really all I remember about it. You know, the catchpole has like some minutia as to how you deploy it and utilize it. So most of it was in -- in regards to that.

Q. Have you ever used a catchpole?

A. No.

Q. Are catchpoles brought to all warrant entries by the SWAT team?

A. The catchpole is always in the armored car that we always bring to every warrant. If we know -- if we have a good idea that there's dogs in the house, we might bring it up to the front door and get it just a little bit closer. But it's always with



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

SERGEANT RYAN J. ROMIG - BY MR. SHIELDS

charge of making sure it comes to the front door. That's it.  Yeah.  That's it.

Q.  Okay.  And then can you tell me everything that you remember about the less lethal school with regards to dealing with dogs?

A.  Just as you discussed -- as you mentioned earlier, that oleoresin capsicum affects dogs.  So they touched on that.  The fact that things like pepper spray and O -- and OC tear gas grenades can affect dogs both in the -- in the perspective it -- it can affect an aggressive dog, but it also that it -- if you -- if you had a police dog with you, it could affect the police dog as well.

And then they talked about how noise flash diversion devices commonly known as flash-bangs are effective for pacifying dogs.  So it's a consideration for the deployment of those things if we know there's aggressive dogs at the location or if we encounter an aggressive dog, oftentimes you can deploy that noise flash diversion device and it will -- it'll run back to its kennel and go in its kennel.  So they touched on those two things primarily.

That's my memory of it.  Again, it was quite a few years ago.  But in reviewing that -- that



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

A C K N O W L E D G M E N T

I, Sergeant Ryan J. Romig, declare, swear and aver that I have read my testimony contained herein and that my answers are true and correct, with any exceptions noted on the errata sheet, under penalty of perjury.

_____
Sergeant Ryan J. Romig

I certify that this transcript was signed in my presence by Sergeant Ryan J. Romig on the 02 day of April, 2023.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal of office of Notary Public on this 02 day of April, 2023.

_____
Notary Public

10/10/25
_____
My Commission Expires:

PEACHIE L. JONES
NOTARY PUBLIC, STATE OF NEW YORK
REG. NO. 02JO6365436
QUALIFIED IN Monroe COUNTY
COMMISSION EXPIRES 10/10/25



ALLIANCE
COURT REPORTING, INC.
Videography · Remote · Deposition Suites
www.alliancecourtreporting.net · 585.546.4920

**Confidential**

157

E R R A T A   S H E E T

Witness: Sergeant Ryan J. Romig
Deposition Date:  February 17, 2023

| Pg # | Line # | Change | Clarification |
| --- | --- | --- | --- |
| 7 | 20 | Delete comma... | to make grammatically correct. |
| 16 | 5 | Replace "no" with "correct" | to make my answer clearer. |
| 35 | 10 | Add "A warrantless entry onto someone's property ~~to search it is~~ presumptively unreasonable. | To clearly state my understanding of the law. |
| 96 | 10 | That line should read "pepper spray and OC and tear gas grenades can" | Just clarifying that OC is distinct from "tear gas grenades." |
| 121 | 25 | Phrase should read "I see where you're going with it." | I believe a word was inadvertently omitted. |
| 141 | 6 | Change to "Locally, no." | To make it clear that I had not heard of that occuring locally. |
| 148 | 12-16 | Those lines should be attributed to Ms. Jones, not me. | These lines contain her question, to which I responded in line 17. |
| 152 | 13-16 | I believe those lines should be attributed to ~~the videographer, not~~ Mr. Shields. | |
| 26 | 16 | Line should begin "So you ~~could also use it on...~~" | I was describing ways to use the foam baton, and do not want to suggest that we necessarily did or would. |



**ALLIANCE**
COURT REPORTING, INC.
*Videography · Remote · Deposition Suites*
www.alliancecourtreporting.net · 585.546.4920