UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ERIN GURSSLIN,

              Plaintiff,

      v.

CITY OF ROCHESTER, *A municipal entity*, JEREMY NELLIST, *Police Officer*, JOSHUA P. KELLY, *Police Officer*, FABIAN RIVERA, *Commander*, and AARON SPRINGER, *Lieutenant*,

              Defendants.
_____

**DECISION AND ORDER**

6:20-CV-06508 EAW

## **INTRODUCTION**

On September 6, 2018, Rochester Police Department ("RPD") officers Jeremy Nellist ("Nellist") and Joshua P. Kelly ("Kelly") traversed through the backyard of plaintiff Erin Gursslin's ("Plaintiff") property on St. Paul Street, in the City of Rochester (the "City"), during the course of executing a search warrant at a location three properties north of Plaintiff's. On their return trip, Nellist and Kelly encountered Plaintiff's foster dog, Nina, whom they shot and killed.

Plaintiff thereafter sued the City, Nellist, Kelly, RPD Commander Fabian Rivera ("Rivera"), and RPD Lieutenant Aaron Springer ("Springer") (collectively "Defendants") for having unreasonably searched the curtilage of Plaintiff's property, for having unlawfully seized Nina, and for having unlawfully seized Plaintiff, all in violation of the

- 1 -

Fourth Amendment. (Dkt. 1). The parties have cross-moved for summary judgment as to Plaintiff's claim for unreasonable search of her curtilage. (Dkt. 94; Dkt. 99).[1]

Plaintiff has also filed a motion to "temporarily" seal portions of the papers in support of her motion for partial summary judgment. (Dkt. 95). Defendants have opposed this motion to the extent that they argue the sealing should be permanent. (Dkt. 97).

For the reasons below, the Court finds that all the documents submitted in connection with the pending cross-motions for summary judgment (Dkt. 94; Dkt. 99) must be filed on the docket in unredacted form. The Court further denies Plaintiff's motion for summary judgment on her unreasonable search claim, and grants Defendants' motion for summary judgment as to the same.

## BACKGROUND

### I. Factual Background

On September 6, 2018, Plaintiff owned a duplex home at 1747 St. Paul Street, Rochester, New York. (Dkt. 94-2 at ¶ 1; Dkt. 99-22 at ¶ 1).[2] Plaintiff lived in the upstairs apartment with her boyfriend and Nina. (Dkt. 94-2 at ¶ 3; Dkt. 99-22 at ¶ 3).

---

[1] The City has also filed a motion for summary judgment with respect to Plaintiff's seizure claims (Dkt. 114) and a motion to preclude Plaintiff's proposed expert witness James Crosby (Dkt. 113). Briefing on these motions was only recently concluded, and the Court will issue a decision on them in due course.

[2] Significant portions of Plaintiff's Local Rule 56 Statement of Undisputed Facts (Dkt. 94-2) are redacted, pursuant to Plaintiff's motion for temporary sealing. Because the Court orders that an unredacted version of this document be filed, for reasons discussed below, the Court recites information herein included in the unredacted version submitted to the Court.

Nellist and Kelly were members of the RPD's Special Weapons and Tactics ("SWAT") team, assigned to the Sniper Team. (Dkt. 94-2 at ¶ 16, Dkt. 99-22 at ¶ 16). The SWAT team was planning to execute a High-Risk Search Warrant ("HRSW") at 1771 St. Paul Street, which was located approximately three properties north of 1747 St. Paul Street. (Dkt. 94-2 at ¶ 13; Dkt. 99-22 at ¶ 13).

In the week prior to executing the HRSW, Nellist and Kelly were responsible for choosing their "final operating position" as snipers. (Dkt. 94-2 at ¶ 2; Dkt. 99-22 at ¶ 22). Nellist and Kelly chose a location behind a garage at 1754 St. Paul Street, located one lot north of Plaintiff's property. (Dkt. 94-2 at ¶ 23; Dkt. 99-22 at ¶ 23). To access this location, Nellist and Kelly entered Plaintiff's driveway and backyard. (Dkt. 94-2 at ¶ 24; Dkt. 99-22 at ¶ 24). Nellist and Kelly did not have a warrant or consent, nor were there exigent circumstances. (Dkt. 94-2 at ¶ 25; Dkt. 99-22 at ¶ 25). Nellist and Kelly determined that they would "infiltrate to and exfiltrate from their final operating position" by walking down Plaintiff's driveway, through her backyard, and jumping the fence in the northwest corner of her backyard. (Dkt. 94-2 at ¶ 26; Dkt. 99-22 at ¶ 26).

On September 6, 2018, the RPD executed the HRSW. (Dkt. 94-2 at ¶ 38; Dkt. 99-22 at ¶ 38). At approximately 4:45 a.m., Nellist and Kelly infiltrated to their final operating position by walking down Plaintiff's driveway and through her backyard, and jumping the fence in the northwest corner of her backyard. (Dkt. 94-2 at ¶ 39; Dkt. 99-22 at ¶ 39). They did not have a warrant or consent. (Dkt. 94-2 at ¶¶ 40-41; Dkt. 99-22 at ¶¶ 40-41).

Nellist and Kelly remained in their final operating position until after the HRSW had been executed. (Dkt. 94-2 at ¶ 50; Dkt. 99-22 at ¶ 50). At approximately 6:00 a.m.,

Nellist and Kelly exfiltrated from their final operation position by taking the same route they had taken to get there. (Dkt. 94-2 at ¶ 51; Dkt. 99-22 at ¶ 51). On their return trip through Plaintiff's backyard, Nellist and Kelly encountered Nina, whom they shot and killed. (Dkt. 94-2 at ¶¶ 58-66; Dkt. 99-22 at ¶¶ 58-66).

## II. Procedural Background

Plaintiff commenced this action on July 15, 2020. (Dkt. 1). Plaintiff filed her motion for partial summary judgment on her unlawful search claim and her motion for temporary sealing on September 13, 2023. (Dkt. 94; Dkt. 95). Defendants filed a response to the motion to seal (Dkt. 97) and Plaintiff filed a reply (Dkt. 98).

On October 13, 2023, Defendants cross-moved for partial summary judgment on Plaintiff's unlawful search claim, and opposed Plaintiff's motion for partial summary judgment. (Dkt. 99). Plaintiff filed a response to Defendants' motion and a reply in further support of her motion (Dkt. 108), and Defendants filed a reply in further support of their motion (Dkt. 109).

## DISCUSSION

### I. Motion to Seal

#### A. Legal Standard

At common law, there is a longstanding "right of public access to judicial documents." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006); *see also United States v. Erie Cnty.*, 763 F.3d 235, 238-39 (2d Cir. 2014) ("The notion that the public should have access to the proceedings and documents of courts is integral to our system of government."). "Before any such common law right can attach, however, a court

must first conclude that the documents at issue are indeed 'judicial documents.'" *Lugosch*, 435 F.3d at 119. "[T]he mere filing of a paper or document . . . is insufficient to render that paper a judicial document." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"). Rather, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process . . . ." *Id.*

"Once the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption." *Lugosch*, 435 F.3d at 119. "The weight afforded to that presumption depends upon 'the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *Mayer v. Patriot Pickle Inc.*, No. 23-CV-1299-LJV, 2024 WL 162881, at *2 (W.D.N.Y. Jan. 16, 2024) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*")). "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Amodeo II*, 71 F.3d at 1049.

"Finally, after determining the weight of the presumption of access, the court must balance competing considerations against it." *Lugosch*, 435 F.3d at 120 (internal quotation marks and citation omitted). "Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Id.* (internal quotation marks and citation omitted).

## B. Application

Plaintiff submitted in connection with her motion for partial summary judgment on her unreasonable search claim a number of documents that Defendants had marked confidential pursuant to the stipulated protective order (Dkt. 20) entered by Magistrate Judge Mark W. Pedersen. Plaintiff asked that the Court only temporarily seal the documents, explaining that she did not believe that they had properly been marked confidential, but that the terms of the stipulated protective order required her to seek leave to file them under seal.

In response to Plaintiff's motion, Defendants take the position that the documents at issue should be permanently sealed. (Dkt. 97). Defendants argue that certain information regarding the SWAT operation should be sealed "in order to preserve the confidentiality of SWAT and sniper tactics and techniques," and that other documents should be sealed because they reveal which apartment at 1771 St. Paul Street was the target of the HRSW, in derogation of the privacy interests of the residents of that building. (*Id.* at 3-7). Defendants also argue that certain of the documents are not judicial documents because they are not relevant to the pending motions and that the presumption of public access is low because "the SWAT operation functions solely as a background to the relevant incident[.]" (*Id.* at 3).

Initially, the Court rejects Defendants' contentions that any of the documents at issue are not judicial documents and that the weight of the presumption is low. The Second Circuit explicitly held in *Lugosch* that "documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a

strong presumption of access attaches." 453 F.3d at 121. The documents at issue here explain how the SWAT action underlying this matter was carried out, as well as the RPD's policies and practices regarding SWAT actions and entries into the curtilage of citizens' homes. The Court cannot conclude that any of the documents are irrelevant to the pending motions, and they do not "receive different weights of presumption based on the extent to which they were relied upon in resolving the motion." *Id*. at 123. There is a strong presumption of public access to the documents in question.

The Court further finds that Defendants have not demonstrated that the law enforcement privilege protects the information contained in the documents. "[T]he party asserting the law enforcement privilege must show that the documents contain information that the law enforcement privilege is intended to protect," which includes "information pertaining to law enforcement techniques and procedures, information that would undermine the confidentiality of sources, information that would endanger witness and law enforcement personnel or the privacy of individuals involved in an investigation, and information that would otherwise interfere with an investigation." *In re The City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) (quotations and alterations omitted). The focus of the inquiry is whether disclosure of the information at issue would impede "the ability of the police department to conduct effective law enforcement, presently and in the future." *Walls v. City of New York*, 502 F. Supp. 3d 686, 698 (E.D.N.Y. 2020) (citation omitted). "In order to sustain the privilege, a party must make a clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted, and they may not rely simply on generalized reiterations of the policies

underlying the privilege." *Coleman v. Cnty. of Suffolk*, 174 F. Supp. 3d 747, 756 (E.D.N.Y. 2016) (citation omitted), *aff'd*, 685 F. App'x 69 (2d Cir. 2017).

Defendants have fallen short of meeting their burden here. They assert in a vague and conclusory fashion that "[p]ublic knowledge about sniper and SWAT techniques undermines law enforcement ability to inconspicuously operate and perform their functions." (Dkt. 97 at 4). But Defendants do not seek sealing of Exhibit 15 to Plaintiff's motion for partial summary judgment, which is a copy of the RPD's standard operating procedures manual ("SOP manual") for the SWAT team. (Dkt. 94-18). Plaintiff obtained a copy of this document pursuant to a Freedom of Information Law request. (*See* Dkt. 98 at 6 n.1). The SOP manual explains that SWAT snipers choose a final operating position, what a final operating position is, and why it is chosen. (*See* Dkt. 94-18 at 9, 71-72). Defendants have offered no explanation for why, given that this information is publicly available, it would impede effective law enforcement for the public to know how the final operating position in this case was chosen. Moreover, significant portions of the documents at issue do not discuss specific SWAT techniques at all, but are about specifically what happened in this case. Defendants' cursory arguments are insufficient to overcome the strong presumption of public access.

As to Defendants' invocation of the privacy interests of third parties living at 1771 St. Paul Street, it is already public knowledge that 1771 St. Paul Street was the target of the HRSW, as that information is contained in the complaint. (*See* Dkt. 1 at ¶ 3). Defendants do not assert that the residents who resided in the apartment in 2018 continue

to reside there and have not shown that any privacy interests in the specific apartment that was the target of the HRSW outweigh the strong presumption of public access.

For these reasons, the Court finds that none of the documents submitted in connection with the parties' cross-motions for summary judgment should be sealed. The parties are ordered to publicly file the documents that are the subject of the motion to seal within 14 days of entry of this Decision and Order.

## II.     Cross-Motions for Summary Judgment

### A.     Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "The moving party bears the burden of showing the absence of a genuine dispute as to any material fact[.]" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

B. **Plaintiff's Unreasonable Search Claim**

The parties each seek summary judgment on Plaintiff's unreasonable search claim, which is her second claim for relief. (*See* Dkt. 1 at ¶¶ 184-96). The parties also seek partial summary judgment on Plaintiff's first claim for relief, which is for "municipal liability," to the extent such claim is premised on the alleged unreasonable search of Plaintiff's curtilage. (*See id*. at ¶¶ 107-83).

The Court notes as a threshold matter that municipal liability is "an extension of liability, not an independent cause of action[.]" *Soto v. City of New York*, 132 F. Supp. 3d 424, 459 (E.D.N.Y. 2015). Accordingly, the issue before the Court is whether either side is entitled to summary judgment on the unreasonable search claim, including as it is asserted against the City. The Court determines that Defendants are entitled to summary judgment on this claim, because no reasonable fact-finder could conclude that Nellist and

Kelly's entry into Plaintiff's property on September 6, 2018, constituted a "search" within the meaning of the Fourth Amendment.³

"The Fourth Amendment prohibits unreasonable searches and seizures." *United States v. Amerson*, 483 F.3d 73, 77 (2d Cir. 2007). It is undisputed that when Nellist and Kelly entered Plaintiff's property on September 6, 2018, they were using her property as a pass-through to access the final operating position located behind the garage at 1754 St. Paul Street. (*See* Dkt. 94-2 at ¶ 39; Dkt. 99-22 at ¶ 39).⁴ Plaintiff describes their actions as "cut[ting] through" her backyard. (Dkt. 94-2 at ¶ 45). She acknowledges that they "walked through" her property and jumped the fence (*id*. at ¶ 48), and does not allege or point to any evidence that they engaged in any information-seeking activities while doing so. In short, Plaintiff's theory is that impermissibly entering into the curtilage of her home, without more, constitutes a search for Fourth Amendment purposes. (*See* Dkt. 108 at 19 ("[B]y physically intruding into Ms. Gursslin's fenced-in back yard—the curtilage to her property—the police 'searched' an area where Ms. Gursslin had a reasonable expectation of privacy, in violation of her Fourth Amendment rights.")).

The Supreme Court has explicitly rejected the theory advanced by Plaintiff. For more than forty years, it has been the law that "an actual trespass is neither necessary nor

---

³   The parties argue at length in their papers about whether the areas of Plaintiff's property that Nellist and Kelly entered are properly considered "curtilage." The Court need not and does not reach this issue, because it concludes that no search occurred regardless of whether the property was curtilage.

⁴   Plaintiff's unreasonable search claim is based on Kelly's and Nellist's entry onto her property on September 6, 2018, and not on any entry they made on some earlier date while choosing the final operating position. (*See* Dkt. 1 at ¶¶ 49-59, 184-94).

<u>sufficient</u> to establish a constitutional violation." *United States v. Karo*, 468 U.S. 705, 713 (1984) (emphasis added); *see also Georgia v. Randolph*, 547 U.S. 103, 118 (2006) (explaining that "when the police may enter without committing a trespass, and when the police may enter to search for evidence" are "two different issues"). In *United States v. Jones*, 565 U.S. 400 (2012), the Supreme Court reiterated that "[t]respass alone" does not qualify as a search for Fourth Amendment purposes, but must be "conjoined with . . . an attempt to find something or to obtain information." *Id*. at 408 n.5. "A trespass on 'houses' or 'effects,' or . . . [an] invasion of privacy, is not alone a search unless it is done to obtain information." *Id*. In *Grady v. North Carolina*, 575 U.S. 306 (2015), the Supreme Court explained that *Jones* stands for the proposition that "a government intrusion is not a search unless done to obtain information." *Id*. at 310 (quotation omitted). "Under *Jones*, when governmental invasions are accompanied by physical intrusions, a search occurs when the government: (1) trespasses upon a constitutionally protected area, (2) to obtain information." *Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019).

Plaintiff's arguments to the contrary are unpersuasive. Plaintiff argues that the Second Circuit's decision in *United States v. Lewis*, 62 F.4th 733 (2d Cir. 2023), stands for the proposition that any governmental intrusion into a constitutionally protected area is a Fourth Amendment violation. (*See* Dkt. 108 at 18-19). But the issue in *Lewis* was not whether there had been a search—there indisputably had—but whether the defendant had a reasonable expectation of privacy in the shared porch where the search occurred. 62 F.4th at 740. The *Lewis* decision says nothing about whether a Fourth Amendment "search" occurs where there is no attempt to obtain any information.

To the contrary, the Second Circuit has explicitly held that "[a] 'search' occurs for purposes of the Fourth Amendment if the police <u>seek information</u> by intruding on a person's reasonable expectation of privacy or by means of trespassing upon one's person, house, papers, or effects."  *United States v. Smith*, 967 F.3d 198, 205 (2d Cir. 2020) (emphasis added); *see also El-Nahal v. Yassky*, 835 F.3d 248, 254 (2d Cir. 2016) (a Fourth Amendment search occurs "when the Government <u>acts to obtain information</u> by physically intruding on a constitutionally protected area" (emphasis added and quotation and alterations omitted)).  And  in *United States v. Hayes*, 551 F.3d 138 (2d Cir. 2008), the Second Circuit held that a "transient trespass" through the protected curtilage of a home "does not implicate the Fourth Amendment where the incriminating evidence is discovered outside the curtilage."  *Id*. at 147.  In other words, *Hayes* indicates that what matters is where the information gathering—the search—occurred.

Plaintiff also argues that *Florida v. Jardines*, 569 U.S. 1 (2013), supports her position.  In *Jardines*, the Supreme Court held that "using a drug-sniffing dog on a homeowner's porch to investigate the contents of the home" was a search within the meaning of the Fourth Amendment.  *Id*. at 3, 11-12.  In reaching that conclusion, the Supreme Court held that while there is an implied license to enter the curtilage of a home to "approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave," that implied license did not extend to "introducing a trained police dog to explore the area around the home in hopes of discovering incriminating evidence[.]"  *Id*. at 8.

Plaintiff argues that Kelly and Nellist did not have an implied license to enter the curtilage of her home in order to use it as a pass-through to access their final operating position. (Dkt. 108 at 20-23). This argument misses the point. Kelly and Nellist do not argue that they had an implied license to enter Plaintiff's property. (*See* Dkt. 109 at 11 n. 11 (disclaiming any such argument)). Moreover, the Supreme Court's consideration of whether the officers in *Jardines* had an implied license occurred only <u>after</u> it had concluded that the officers were "gathering information" in the curtilage of the home. 569 U.S. at 5, 7. The *Jardines* Court explained that "an officer's <u>leave to gather information</u> is sharply circumscribed when he steps off [public] thoroughfares and enters the Fourth Amendment's protected areas." *Id*. at 7 (emphasis added). The *Jardines* Court ultimately concluded that a search occurred because the officers "physically intrud[ed] on Jardines' property <u>to gather evidence</u>." *Id*. at 11. The *Jardines* Court also cited *Jones* with approval *Id*. *Jardines* confirms, rather than contradicts, Defendants' argument that no Fourth Amendment search of Plaintiff's property occurred on September 6, 2018. *See United States v. McKenzie*, 13 F.4th 223, 231 (2d Cir. 2021) (explaining that *Jardines* "recognizes a search when the Government obtains information by physically intruding on persons, houses, papers, or effects").

Plaintiff also cites *Kyllo v. United States*, 533 U.S. 27 (2001), arguing that it stands for the proposition that "any physical intrusion of the home constitutes a search[.]" (Dkt. 108 at 19). But that is not what *Kyllo*—which predates *Jones* in any event—says. *Kyllo* involved "the use of a thermal-imaging device aimed at a private home from a public street to detect relative amounts of heat within the home." 533 U.S. at 29. The *Kyllo* Court

concluded that the use of "a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion," constituted a search for Fourth Amendment purposes. *Id.* at 40. Thus, in *Kyllo*, the gathering of otherwise unknowable details about the home was a key factor in the analysis. And while the *Kyllo* Court observed that "[t]he Fourth Amendment's protection of the home has never been tied to measurement of the quality or quantity of information obtained," *id.* at 37, it did not suggest that a trespass entirely unrelated to an information gathering purpose nevertheless would constitute a search.

Because there is nothing in the record before the Court to support the conclusion that Nellist and Kelly physically intruded on Plaintiff's property on September 6, 2018, in order to obtain information, the Court finds as a matter of law that there was no "search" of Plaintiff's property for purposes of the Fourth Amendment. *See, e.g.*, *Alicea v. Smith*, No. 3:23-CV-528 (VAB), 2024 WL 1704999, at *6 (D. Conn. Apr. 20, 2024) (dismissing Fourth Amendment claim for unreasonable search because "[a] search must be undertaken in order to obtain information or otherwise find something" and plaintiff had not alleged that "the police SUV parked outside of her home in an attempt to obtain information about her, nor has she alleged that any officers engaged in any type of investigatory activity or surveillance"); *Sutter v. Dibello*, No. 18-CV-817(SJF)(AKT), 2021 WL 930459, at *30 (E.D.N.Y. Mar. 10, 2021) (finding that the defendant's "conduct in accompanying plaintiff into her home and remaining 'stationed' by the stairs with his eyes open until she had recovered her firearm does not constitute a search for purposes of the Fourth Amendment"

where the defendant did not "attempt to find anything or to obtain information for any purpose").

The absence of a Fourth Amendment search is equally fatal to the unreasonable search claim against Rivera and Springer, who are alleged to have instructed Nellist and Kelly to enter Plaintiff's backyard. (Dkt. 1 at ¶ 190); *see Acosta v. Thomas*, 837 F. App'x 32, 35 (2d Cir. 2020) ("[F]or a supervisor to be liable . . ., there must have been an underlying constitutional deprivation." (quotation omitted)). It is also fatal to the unreasonable search claim against the City, because municipal liability cannot attach where there was no underlying constitutional violation. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability . . . was entirely correct.").

In sum, the Court finds because Kelly's and Nellist's physical intrusion onto Plaintiff's property on September 6, 2018, was not undertaken to obtain information, it does not constitute a search for purposes of the Fourth Amendment as a matter of law. This holding should not be taken to condone the officers' actions in using Plaintiff's property to access their final operating position without her knowledge or consent, nor does the Court reach any conclusion about whether Defendants' actions were otherwise unlawful.

## **CONCLUSION**

For the foregoing reasons, the Court resolves Plaintiff's motion to seal (Dkt. 95) by concluding that none of the documents submitted in connection with the parties' cross-motions for partial summary judgment (Dkt. 94; Dkt. 99) should be maintained under seal.

The parties are ordered to file complete documents on the public docket within 14 days of entry of this Decision and Order, using the "Continuation of Exhibits" event in CM/ECF.

The Court denies Plaintiff's motion for partial summary judgment on the unreasonable search claim (Dkt. 94) and grants Defendants' motion for partial summary judgment on the unreasonable search claim (Dkt. 99).

The Court will issue a decision on Defendants' motions to preclude Plaintiff's expert witness (Dkt. 113) and for partial summary judgment on Plaintiff's unlawful seizure claims (Dkt. 114) in due course.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 16, 2024
       Rochester, New York