UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLES DEMPSEY, *individually,* and
L.D., *by her father and natural guardian,*
*Charles Dempsey,*

                    Plaintiffs,

        v.

THE CITY OF ROCHESTER, *a municipal
entity,* JAVIER ALGARIN, ADAM GORMAN,
and JOHN DOE, *RPD Officer responsible for
training Javier Algarin,*

                 Defendants.
_____

ERIN GURSSLIN,

                   Plaintiff,

        v.

CITY OF ROCHESTER, *a municipal entity,*
JEREMY NELLIST, *Police Officer,* JOSHUA
P. KELLY, *Police Officer,* FABIAN RIVERA,
*Commander,* and AARON SPRINGER,
*Lieutenant,*

                 Defendants.
_____

REGINALD MCGILL,

                   Plaintiff,

        v.

THE CITY OF ROCHESTER and TREVOR
JONES,

                 Defendants.
_____

**DECISION AND ORDER**

6:19-CV-06780 CDH

6:20-CV-06508 CDH

6:22-CV-06523 CDH

_____

VICTORIA PRESTON,

                  Plaintiff,

            v.

THE CITY OF ROCHESTER and
MITCHELL LEACH,

                  Defendants.

6:22-CV-06525 CDH

_____

## INTRODUCTION

The above-captioned matters are four trial-ready cases in which Rochester Police Department ("RPD") officers shot and killed the plaintiffs' pet dogs. (*Dempsey v. They City of Rochester et al.*, No. 6:19-CV-6780 ("*Dempsey*"), Dkt. 104 at 1; *Gursslin v. City of Rochester, et al.*, No. 6:20-CV-6508 ("*Gursslin*"), Dkt. 128 at 1; *McGill v. The City of Rochester, et al.*, No. 6:22-CV-6523 ("*McGill*"), Dkt. 60 at 1; *Preston v. The City of Rochester, et al.*, No. 6:22-CV-6525 ("*Preston*"), Dkt. 46 at 1). Each case involves claims against the City of Rochester (the "City") and at least one individual employee of the RPD. The same attorneys represent the plaintiffs and the defendants in each case. For purposes of the instant Decision and Order, the plaintiffs and the defendants in these four cases are referred to collectively as "Plaintiffs" and "Defendants."

In each of the cases, Defendants have filed a motion to bifurcate the trial pursuant to Federal Rule of Civil Procedure 42(b). (*Dempsey*, Dkt. 119; *Gursslin*, Dkt. 140; *McGill*, Dkt. 68; *Preston*, Dkt. 53). In particular, Defendants argue that the issue

of municipal liability should be bifurcated and tried separately from the issue of individual liability. For the reasons that follow, the motions to bifurcate are denied.

## BACKGROUND

The Court assumes the parties' familiarity with the factual and procedural background of these matters for purposes of this Decision and Order. The facts and procedure salient to the instant motions are summarized below. In each case, the parties dispute the pet dog's behavior in the moments prior to the shooting, with Defendants maintaining that the pet dog presented a threat to officer safety.

## I.    Factual Background

### A.    *Dempsey*

On October 19, 2018, *Dempsey* defendants Javier Algarin and Adam Gorman, along with other RPD officers, responded to a 911 call regarding drug sales occurring at a property near the home where the plaintiffs Charles Dempsey and his daughter, L.D., resided. (*Dempsey*, Dkt. 104 at 3). After Gorman and a non-party officer apprehended two suspects, Algarin jumped over a tall fence and entered the Dempseys' backyard, purportedly in search of a gun he believed a suspect had dropped. (*Id*. at 3-4). Algarin subsequently left the backyard, but after Gorman instructed Algarin to "backtrack," he jumped back into the Dempseys' backyard. (*Id*. at 4-5). Seconds after Algarin re-entered the backyard, Dempsey let his and L.D.'s black Labrador retriever, Tesla, out of their back door. (*Id*. at 5). When Tesla ran towards Algarin, he shot her twice, later pointing his gun at Dempsey, telling him to "get down[.]" (*Id*.). L.D., who was eleven at the time, observed Algarin pointing his

gun at Dempsey and the aftermath of Tesla's injuries. (*Id.* at 5-6). Despite efforts to save Tesla, she died from her injuries. (*Id.* at 6).

**B.    *Gursslin***

On September 6, 2018, *Gursslin* defendants Jeremy Nellist and Joshua P. Kelly traversed through the backyard of the plaintiff Erin Gursslin's property on St. Paul Street during the course of executing a search warrant at a location three properties north of Gursslin's home. (*Gursslin*, Dkt. 128 at 2-23). While planning for the execution of this search warrant, Nellist and Kelly had determined that they would infiltrate to and exfiltrate from their final operating position by walking down Gursslin's driveway and through her backyard and then jumping the fence in the northwest corner of her backyard. (*Id.* at 2). While exfiltrating through Gursslin's property, Nellist and Kelly encountered Gursslin's foster dog, Nina, whom they shot and killed. (*Id.* at 3).

**C.    *McGill***

At approximately midnight on August 2, 2021, the plaintiff Reginald McGill called 911 to report that he had found a bullet hole in the front wall of his bedroom and a bullet on his bed. (*McGill*, Dkt. 60 at 3). *McGill* defendant Trevor Jones and two other, non-party RPD officers arrived at McGill's home to investigate. (*Id.*). After the officers inspected the bullet inside McGill's bedroom, they exited the home. (*Id.*). Jones walked down the driveway and then walked back towards the house, at which time McGill's dog, Roxy, exited the home and approached him. (*Id.* at 4). Jones shot Roxy three times and she died from her injuries. (*Id.* at 4-5).

D.    *Preston*

On February 14, 2021, the plaintiff Victoria Preston was at a home in the City owned by her ex-boyfriend and the father of her one-year-old daughter. (*Preston*, Dkt. 46 at 2). Preston's child and her dog, Zyria, were also present. (*Id.*). RPD Officers and Child Protective Services ("CPS") employees arrived at the home and Preston placed Zyria in the bathroom. (*Id.*). However, Zyria subsequently escaped from the bathroom and was shot and killed by *Preston* defendant Mitchell Leach. (*Id.* at 2-3).

## II.    Procedural Background

Defendants moved for summary judgment in each of these cases, and Chief Judge Elizabeth A. Wolford, to whom the matters were then assigned, determined that there were genuine issues of material fact as to certain claims and that trials were required. (*See Dempsey*, Dkt. 104; *Gursslin*, Dkt. 120; *Gursslin*, Dkt. 128[1]; *McGill*, Dkt. 60; *Preston*, Dkt. 46). Following dispositive motion practice, the following claims against the individual defendants remain in the cases, as do claims against the City pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978):

- *Dempsey*: unreasonable search of curtilage against Algarin and Gorman; unreasonable seizure of Tesla and Dempsey by Algarin; failure to intervene by Gorman with respect to Algarin's entry into the backyard; and New York

---

[1]    Three motions for summary judgment were filed in *Gursslin*: a motion for partial summary judgment by the plaintiff (*Gursslin*, Dkt. 94), a cross-motion for partial summary judgment by the defendants (*Gursslin*, Dkt. 99), and a second motion for partial summary judgment by the defendants (*Gursslin*, Dkt. 114).

State law claims of trespass and assault against Algarin and Gorman. (*Dempsey*, Dkt. 104 at 18, 26, 28-31).[2]

- *Gursslin*: unreasonable seizure of Nina by Nellist, Kelly, and individual defendants Fabian Rivera and Aaron Springer. (*Gurrslin*, Dkt. 128 at 1-2, 27).

- *McGill*: unreasonable seizure of Roxy by Jones. (*McGill*, Dkt. 60 at 1, 14-15).

- *Preston*: unreasonable seizure of Zyria by Leach. (*Preston*, Dkt. 46 at 1, 16-17).

The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73 in each case. (*Dempsey*, Dkt. 114; *Gursslin*, Dkt. 137; *McGill*, Dkt. 65; *Preston*, Dkt. 50).

On September 12, 2025, Defendants filed the instant motions pursuant to Rule 42(b) seeking to bifurcate the scheduled trials, proposing that the trials be split into two, with the first set of trials covering individual liability and the second set covering municipal liability. (*Dempsey,* Dkt. 119; *Gursslin*, Dkt. 140; *McGill*, Dkt. 68; *Preston*, Dkt. 53).

Plaintiffs filed responses on October 3, 2025, and Defendants filed their replies on October 17, 2025. (*Dempsey*, Dkt. 121; *Dempsey*, Dkt. 122; *Gursslin*, Dkt. 143; *Gursslin*, Dkt. 144; *McGill*, Dkt. 70; *McGill*, Dkt, 71; *Preston*, Dkt. 56; *Preston*, Dkt. 57). The Court held oral argument on the instant motions on October 27, 2025, and reserved decision. (*See Dempsey*, Dkt. 125; *Gursslin*, Dkt. 147; *McGill*, Dkt. 74; *Preston*, Dkt. 60).

---

[2]    The *Dempsey* plaintiffs also seek to hold the City liable for the New York state law claims pursuant to the theory of *respondeat superior*. *See Palmer v. City of N.Y.,* 564 F. Supp. 3d 221, 252 (E.D.N.Y. 2021) (municipalities "may be liable for the state-law torts committed by their employees under the theory of respondeat superior").

## DISCUSSION

### I.    Legal Standard

Pursuant to Rule 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b); *see also Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999) (courts should consider if "an order [for bifurcation] will further convenience, avoid prejudice, or promote efficiency"); *Vichare v. AMBAC Inc.*, 106 F.3d 457, 466 (2d Cir. 1996) ("The interests served by bifurcated trials are convenience, negation of prejudice, and judicial efficiency.").

When deciding a motion to bifurcate, courts generally consider, among other relevant factors, (1) "whether bifurcation is needed to avoid or minimize prejudice," (2) "whether it will produce economies in the trial of the matter," and (3) "whether bifurcation will lessen or eliminate the likelihood of juror confusion." *Crown Cork & Seal Co., Inc. Master Ret. Tr. v. Credit Suisse First Boston Corp.*, 288 F.R.D. 335, 337 (S.D.N.Y. 2013) (citation omitted); *see also Vichare*, 106 F.3d at 466 (bifurcation may "be appropriate where the evidence offered on two different issues will be wholly distinct . . . or where litigation of one issue may obviate the need to try another issue"); *Tafari v. Goord*, No. 06-CV-331, 2011 WL 4914961, at *1 (W.D.N.Y. Oct. 14, 2011) ("To determine whether bifurcation is warranted, the Courts generally consider the following three factors: (1) whether significant resources would be saved by bifurcation; (2) whether bifurcation will increase juror comprehension, and (3)

whether bifurcation will lead to repeat presentations of the same evidence and witnesses.") (quotation omitted).

"Cases in which bifurcation has been granted or denied can be informative but are not decisive in a Rule 42(b) analysis, since 'by its very nature, discretion yields differing outcomes.'" *Mensler v. Wal-Mart Transp., LLC*, No. 13-cv-6901 (JCM), 2015 WL 7573236, at *3 (S.D.N.Y. Nov. 24, 2015) (alteration omitted and quoting *Amato*, 170 F.3d at 316); *see also Felix v. City of N.Y.*, No. 16-CV-5845 (AJN), 2020 WL 6048153, at *5 (S.D.N.Y. Oct. 13, 2020) ("Courts in this district have taken a range of approaches to the bifurcation of claims against individual officers from claims against municipalities."). Thus, while "[i]t is entirely appropriate for a district court to bifurcate Section 1983 individual and municipal liability claims" in certain circumstances, bifurcation is not "mechanically *required* in cases featuring claims of both municipal and individual liability. [O]n the contrary, the Second Circuit has recognized that the decision whether to bifurcate a trial is committed to the 'sound discretion' of the district court." *McKoy v. Cnty. of Suffolk*, No. 14-CV-00249 (JMW), 2025 WL 552610, at *3 (E.D.N.Y. Feb. 18, 2025) (original alterations omitted and quoting *Amato*, 170 F.3d at 316); *see also In re Sept. 11 Litig.*, 802 F.3d 314, 339 (2d Cir. 2015) ("Decisions to bifurcate trials . . . are authorized by [Rule] 42(b) and are typically well within the discretion of district courts.").

"Bifurcation is the exception, not the rule, and the movant must justify bifurcation on the basis of the substantial benefits that it can be expected to produce." *Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 433 (W.D.N.Y. 2017) (quotation omitted); *see also  Small v. City of N.Y.*, No. 09-CV-1912 (RA), 2022 WL

1261739, at *12 (S.D.N.Y. Apr. 28, 2022) ("Although a trial court has broad discretion to grant separate trials under appropriate circumstances, for reasons of efficient judicial administration courts favor having only one trial whenever possible." (quotation omitted)); *Falzon v. Johnson*, No. 12-CV-674 (CLP), 2016 WL 11430072, at *2 (E.D.N.Y. Oct. 24, 2016) ("Jurors are generally entitled to hear all of the evidence in one proceeding and deliberate as to all of the issues in the case at the same time."); *Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001) (the party pursuing separate trials "bears the burden of establishing that bifurcation is warranted"), *opinion modified on denial of reconsideration*, No. 95 CIV. 9076(LTS)RL, 2002 WL 1013291 (S.D.N.Y. May 20, 2002).

## II.    **Defendants' Motions to Bifurcate**

Relying on the factors set forth in *Tafari*, 2011 WL 4914961, at *1, Defendants argue that bifurcation is warranted to (1) "prevent . . . unnecessary and premature investment of court resources" and (2) to prevent "prejudice to the individual officers." (*Dempsey*, Dkt. 119-1 at 2-3; *see also Gursslin*, Dkt. 140-1 at 2-3; *McGill*, Dkt. 68-1 at 2-3; *Preston*, Dkt. 53-1 at 2-3).[3]

More particularly, Defendants argue that bifurcation would promote judicial economy because if a jury rules in favor of the individual defendants in an initial trial, the jury could be spared the "encumbrance" of having to assess the "clear majority" of evidence that addresses municipal liability. (*Dempsey*, Dkt. 119-1 at 5). Defendants

---

[3]    For ease of reference, when discussing Defendants' arguments the Court cites primarily to the briefs in *Dempsey*, which are substantively identical to the briefs filed by Defendants in the other actions.

contend that bifurcation would promote judicial economy in *Dempsey* particularly, as compared to the other cases, because the *Dempsey* plaintiffs allege multiple claims, seek extensive damages, have retained separate psychological experts for Dempsey and L.D., and will likely introduce extensive medical records to justify their damages. (*Id.* at 5-7). Defendants maintain that Plaintiffs "must present evidence of multiple prior unreasonable dog shootings" to establish municipal liability, and assert that in a unified trial, a jury may "impermissibly rely on" evidence of unrelated firearm discharges to determine the liability of the individual defendants, so "[t]he Court should bifurcate to prevent such prejudice." (*Id.* at 8).

In opposition, Plaintiffs argue that the Court should deny Defendants' motions because Defendants fail to meet their burden under Rule 42(b). (*Dempsey*, Dkt. 121; *Gursslin*, Dkt. 143; *McGill*, Dkt. 70; *Preston*, Dkt. 59).[4] More specifically, Plaintiffs contend the bifurcation motions should fail because: (1) "[m]ost cases hold that *Monell* claims can and should be tried alongside the claims against individual officers" (*Dempsey*, Dkt. 121 at 9); (2) bifurcation will bar Plaintiffs from presenting evidence that the individual defendants violated an RPD policy and that their training was

---

[4]     Plaintiffs cite *Vichare* for the proposition that courts weigh the following four factors in deciding a motion to bifurcate: "(1) whether the issues are interwoven, (2) whether bifurcation will avoid prejudice, (3) whether separate trials will conserve judicial resources, and (4) whether separate juries risk inconsistent verdicts." (*Dempsey*, Dkt. 121 at 8 (citing *Vichare*, 106 F.3d at 467)); *see also Gursslin*, Dkt. 143 at 8-9; *McGill*, Dkt. 70 at 11; *Preston*, Dkt. 59 at 9-10). The Court could not identify a clear recitation of such factors on the cited page of *Vichare*, nor elsewhere in the case. *See Vichare*, 106 F.3d at 466 ("Bifurcation may [] be appropriate where the evidence offered on two different issues will be wholly distinct, or where litigation of one issue may obviate the need to try another issue." (citation omitted)).

constitutionally inadequate, thus providing the individual defendants with a "non-rebuttable" qualified immunity defense that they "followed [their] [RPD] training[,]" (*id.* at 13); (3) a jury cannot evaluate the "totality of the circumstances," the reasonableness of the individual defendants' actions, their individual liability, or their qualified immunity defenses without evaluating relevant evidence of RPD's policies, training, and customs (*id.* at 15-18); (4) instructions directing the jury to consider what the individual defendants "personally knew and did" separately from whether the City's policies and training caused their actions can cure any risk of prejudice against the individual defendants (*id.* at 16); and (5) bifurcation will waste judicial resources by requiring the Court and the jury to evaluate the same witnesses, documents, camera footage, and legal arguments twice and may risk inconsistent verdicts (*id.* at 6-7, 14). [5] [6]

---

[5]     In her reply declaration, defense counsel reports that she "informed [Plaintiffs' counsel] that [she] could not locate the quotations on pages 17-18 of [his] opposition memorandum in the cases to which they were attributed . . . [and eventually] [h]e acknowledged that the quotes appear to just be a mistake . . . later stat[ing] that he [also] incorrectly attributed a quote from *United States v. Krug*, No. 15-cr-00157, 2019 WL 336568, at *5 (W.D.N.Y. Jan. 28, 2019) to *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004)." (*Dempsey*, Dkt. 122-1 at ¶¶ 4-7 (quotation omitted)). On October 24, 2025, Plaintiffs' counsel filed a motion acknowledging that "several case citations in [his] opposition papers were incorrect" and reporting that he additionally informed defense counsel "that the citation to *United States v. Williams*, 690 F.3d 70, 77 (2d Cir. 2012) should have read *Williams v. City of New York*, 690 F.3d 70, 77 (2d Cir. 2012)." (*Dempsey*, Dkt. 123 at 1-2 (quotations omitted)). The Court appreciates counsel's ability to address this matter without Court intervention. Of course, the Court expects all attorneys who, by signing pleadings, assert their accuracy, to read every case in full and to quote from them accurately before submitting papers to the Court.

[6]     Local Rule of Civil Procedure 7(a)(3) provides that, with limited exceptions not applicable here, "motions and opposition to motions shall be supported by at least one (1) affidavit, declaration or affirmation, and by such other evidence . . . as appropriate

Having carefully considered the parties' arguments, the applicable law, and the evidence of record, the Court concludes that bifurcation is not warranted in these matters. In reaching this conclusion, the Court has considered the issues of prejudice, juror confusion, and judicial economy, and concludes that each counsels against bifurcation, for the reasons set forth below.

### A.    Risk of Prejudice to Defendants and Juror Confusion

Defendants contend that holding a unified trial in these cases creates a risk that a jury will "impermissibly rely on" evidence of unrelated firearm discharges to determine the liability of the Individual Defendants. (*Dempsey*, Dkt. 119-1 at 8). Defendants further argue that they may suffer a "double-portion of prejudice" in *Dempsey* in particular, because they will already be prejudiced by evidence of L.D.'s purported damages resulting from "long-term psychological therapy[,] [] multiple in-patient hospitalizations because of the incident, . . . [and] a permanent loss of closeness between father and child." (*Id.* at 9) (citations omitted); *see also Dempsey*, Dkt. 119-2 at ¶¶ 5-6). Plaintiffs, on the other hand, argue that a jury cannot evaluate the "totality of the circumstances," the reasonableness of the individual defendants' actions, their individual liability, or their qualified immunity defenses without

---

to resolve the particular motion. Failure to comply with this requirement may constitute grounds for resolving the motion against the non-complying party." Loc. R. Civ. P. 7(a)(3) (emphasis added). Plaintiffs have not included an affidavit, declaration, or affirmation with their opposition papers as required by Local Rule 7. The Court excuses this failure in its discretion. *See KeyBank Nat'l Ass'n v. Beauty Quest Skincare, LLC*, No. 1:21-CV-778, 2022 WL 1488676, at *2 (W.D.N.Y. May 11, 2022) ("It is within the district court's discretion to excuse non-compliance with local rules."). The Court, however, cautions that all future filings must adhere to the Local Rules.

evaluating relevant evidence of RPD's policies. (Dkt. 121 at 15).

The Court agrees that certain evidence Plaintiffs may present in support of their claims made under *Monell* could present reasonable concerns of prejudice as to the individual defendants, but finds that such concerns can be adequately addressed by the "curative power of jury instructions and limiting instructions." *McKoy*, 2025 WL 552610, at *4. "[C]ourts in this Circuit have repeatedly observed that even 'substantial prejudice' may be 'adequately mitigated through the ubiquitous and efficacious means of limiting instructions.'" *Gordon Springs v. City of N.Y.*, No. 17-CV-0451 (AJN), 2019 WL 10892065, at *2 (S.D.N.Y. Aug. 21, 2019) (quoting *Schoolcraft v. City of N.Y.*, 133 F. Supp. 3d 563, 571 (S.D.N.Y. 2015)). Here, the jury can and will be properly instructed where evidence is admitted for only a limited purpose.

The Court is unpersuaded by Defendants' assertion that instructions directing the jury to separate evidence of individual liability from municipal liability "will not suffice if Plaintiffs [] argue . . . that a conclusion that the City's actions were unconstitutional means officers acted unconstitutionally as well." (*Dempsey*, Dkt. 122 at 3). The Court has confidence in a jury's ability to distinguish between the City's behavior and that of the individual defendants when properly instructed, because appropriate jury instructions "are well established means of preempting a jury's inclination to rely on prejudice, sympathy, or bias in their deliberation." *Gordon Springs*, 2019 WL 10892065, at *2; *see also Schoolcraft*, 133 F. Supp. 3d at 571 ("[T]he substantial prejudice which City Defendants contend will result from permitting the jury to hear evidence regarding quotas or the blue wall of silence will be adequately

mitigated through the ubiquitous and efficacious means of limiting instructions, jury charges and limiting instructions." (citation omitted)). The Court intends to make use of such instructions to ensure fair proceedings here. *See Rutherford v. City of Mount Vernon*, No. 18 CIV. 10706 (AEK), 2023 WL 8676815, at *4 (S.D.N.Y. Dec. 15, 2023) ("Courts regularly task juries with reviewing different evidence for, and applying different standards to, different parties, and with proper instructions, a jury in this case will be able to perform this function.").

The Court also agrees with Plaintiffs that the individual defendants' intent to invoke a qualified immunity defense makes their training relevant to the issue of individual liability. (*See Dempsey*, Dkt. 121 at 13-14); *see also Rutherford*, 2023 WL 8676815, at *3 ("Evidence of training and policy is particularly relevant where, as here, the defendants intend to argue that they are protected by qualified immunity."); *Gibbs v. Borona*, No. 3:16-CV-00635 (JAM), 2021 WL 4726519, at *2 (D. Conn. Oct. 11, 2021) ("Although internal police training standards do not themselves define what is reasonable under the Fourth Amendment, the weight of authority suggests that the fact that [a law enforcement defendant] received training . . . is nonetheless relevant among other factors to the jury's overall consideration of whether [the law enforcement defendant's] actions were objectively reasonable under the Fourth Amendment and whether they were negligent under state law."); *Vazquez-Mentado v. Buitron*, No. 5:12-CV-0797 LEK ATB, 2014 WL 12894096, at *2 (N.D.N.Y. July 9, 2014) ("evidence of training of law enforcement officials may be relevant to what a reasonable officer would understand as to whether he was violating a clearly established constitutional right" (internal citation omitted)). In other words, evidence

regarding the RPD's policy and training with respect to interactions with pet dogs would be admissible in connection with the individual liability claims. As such, "it is not clear to this Court that bifurcation will eliminate or even substantially reduce the potential prejudice that Defendants fear." *Svege v. Mercedes-Benz Credit Corp.*, 329 F. Supp. 2d 283, 285 (D. Conn. 2004).

The Court is further unpersuaded by Defendants' argument that a failure to bifurcate will yield "a double-portion of prejudice" in *Dempsey* because at the time of the incident L.D. was eleven and "the incident had a ruinous effect on [her] life[.]" (*Dempsey*, Dkt. 119-1 at 9). Even if the Court were to grant bifurcation, evidence as to L.D.'s experiences would be admissible in each trial. *See Svege*, 329 F. Supp. 2d at 285 (denying request to bifurcate where the defendants argued that they would be prejudiced by "evidence regarding the injuries and orphaning of . . . two minor children" because "whether the Court bifurcates the issues or not, the jury will learn . . . that . . . two children were injured"); *see also Chase v. Near*, No. 06-CV-685C(SC), 2007 WL 2903823, at *2 (W.D.N.Y. Oct. 1, 2007) ("[T]he court recognizes the sympathetic nature of a young plaintiff and the potential of prejudice to the defendants. Nonetheless, there are no particular factors specific to this case that distinguish the potential for prejudice here from the potential prejudice which is normally and customarily dealt with through an appropriate charge and curative instructions where necessary." (quotation omitted)).

At the oral argument on the bifurcation motions, the parties' arguments related to prejudice and juror confusion focused in large part on their differing views of the legal theories at issue in these matters. To be clear, the Court's confidence in

the ability of appropriate instructions to mitigate any potential prejudice to Defendants is not and should not be viewed as an endorsement of Plaintiffs' legal theories, which are not properly before the Court at this time. The Court will ultimately decide, with appropriate consideration given to the parties' arguments made in motions in limine, what evidence may be presented in this case. *See Sentry Ins. a Mut. Co. v. Brand Mgmt. Inc.*, No. 10-CIV-347-ENV-RLM, 2016 WL 11430443, at *1 (E.D.N.Y. May 18, 2016) ("A motion in limine allows the trial court to determine in advance of trial the relevance and admissibility of proposed evidence.") (citing *Luce v. U.S.*, 469 U.S. 38, 40 n.2 (1984)). Indeed, motions in limine and their attendant rulings provide another avenue to mitigate any potential prejudice to the defendants without requiring bifurcation.

Based on the reasons articulated above, the Court concludes that the risk of prejudice factor and juror confusion factors do not support bifurcation in these matters.

## B. <u>Judicial Economy</u>

The Court also concludes that considerations of judicial economy do not support bifurcation here. Initially, the Court notes that because Defendants seek bifurcation in each of these matters, were the Court to grant the motions, the potential result would be the holding of two trials in each of these cases, or a total of eight trials. The Court is not persuaded that holding eight trials, rather than four, will "promote[] efficient use of the Court's, parties' and [a] jur[y's] time and resources[.]" (*Dempsey*, Dkt. 119-1 at 4).

*Felix* is instructive. In *Felix*, the plaintiffs sued two New York City Police Department detectives and the City of New York under § 1983 and *Monell*, arguing that a fatal shooting occurred in part because the City of New York failed to properly train and supervise its officers. 2020 WL 6048153, at *1. In denying the City of New York's motion to bifurcate, the court observed that "bifurcation often results in greater burden on court resources and significant delay to the entry of final judgment," and noted that "[a]lthough a finding that no constitutional violation occurred could obviate the need for testimony regarding the *Monell* claim, those gains in judicial efficiency are likely to be outweighed by the efforts required to schedule and prepare for separate trials." *Felix*, 2020 WL 6048153, at *6. This Court is similarly unconvinced that bifurcation will promote judicial economy here, where granting Defendants' motions would potentially require that the Court and the parties schedule and prepare for eight trials, rather than four.

Further, Defendants' arguments that bifurcation would promote judicial economy are largely premised on their contention that because "a plaintiff must prove a constitutional violation before seeking to hold a municipal[ity] liab[le][,] . . . the outcome of the first trial against the police officers may eliminate the need to present evidence against the City in a second trial[,] [and] [i]f/when the jury concludes that the officer[s] did not unlawfully seize these pet dogs, the parties and Court will not proceed to a second, longer trial regarding municipal liability." (*Dempsey*, Dkt. 119-1 at 4). However, this assertion is not fully accurate.

As to *Dempsey* in particular, although Defendants are correct that Plaintiffs must show a constitutional violation to establish municipal liability, they are not

correct that if "[a] jury concludes that the officer[s] did not unlawfully seize [Tesla], the parties and Court will not proceed to a second, longer trial regarding municipal liability." (*Id.*). This is because the plaintiffs in *Dempsey* assert constitutional claims in addition to the unreasonable seizure of Tesla, including unreasonable search of their curtilage, unreasonable seizure of Dempsey, and the failure of Gorman to intervene, on each of which they seek to hold the City liable. (*See Dempsey*, Dkt. 31; *Dempsey*, Dkt. 104 at 18, 26, 28-31). The plaintiffs also assert two state law claims in *Dempsey*, and Defendants have made no argument that a jury would not be required to evaluate these claims in a bifurcated trial even if it found the individual defendants committed no constitutional violations.

Moreover, even in *Gursslin*, *McGill*, and *Preston*, where the sole claims to be tried are for unreasonable seizure of the plaintiffs' pet dogs, it is by no means clear that a jury verdict in favor of the individual defendants would obviate the need for a trial on municipal liability. The Second Circuit has held that "under *Monell*[,] municipal liability for constitutional injuries may be found to exist even in the absence of individual liability, at least so long as the injuries complained of are not solely attributable to the actions of named individual defendants." *Barrett v. Orange Cnty. Hum. Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999); *see also Haslinger v. Westchester Cnty.*, No. 18-CV-5619, 2020 WL 2061540, at *8 (S.D.N.Y. Apr. 29, 2020) (dismissing claim against individual defendants but denying dismissal against county because the plaintiff "plausibly alleged all three prongs of a Monell municipal liability claim"). Specifically, "even in situations where the acts or omissions of individual employees do not violate an individual's constitutional rights, the

combined acts or omissions of several employees acting under a governmental policy or custom may violate those rights." *Barrett*, 194 F.3d at 350 (quotations omitted). The Court cannot rule out, at this stage of the proceedings, the possibility that Gursslin, McGill, or Preston could articulate a viable theory of municipal liability based on the combined acts or omissions of employees of the City.

Further, when "the individual defendants violated [a party's] rights but nonetheless enjoy qualified immunity," that party may still pursue a *Monell* claim. *Bonilla v. Jaronczyk*, 354 F. App'x 579, 582 (2d Cir. 2009). Here, while a jury may find that the individual defendants committed no constitutional violation in a particular case, it could also find that they did commit constitutional violations yet are entitled to qualified immunity. The contention that a verdict in favor of the individual defendants would necessarily resolve the question of municipal liability is thus speculative.

Additionally, as discussed above, a careful review of the record indicates that "there will be significant overlap between the evidence [Plaintiffs] will offer in support of [their] *Monell* claims and in support of the other claim[.]" *Schoolcraft*, 133 F. Supp. 3d at 571. For instance, testimony by the individual defendants about their training and instructions regarding when searches and seizures are constitutionally permitted is relevant to the question of whether Defendants unreasonably searched Plaintiffs' curtilage or seized Dempsey. *See Rutherford*, 2023 WL 8676815, at *3; (*see also Dempsey*, Dkt. 104 at 17 ("Were a juror to conclude that Algarin's re-entry into Plaintiffs' backyard violated the Fourth Amendment, that same juror could easily conclude that Algarin's actions were taken pursuant to an official municipal policy.")).

Similarly, even if the Court granted the motions for bifurcation and the individual defendants were held not liable in an initial trial, this would not necessarily render expert testimony or medical records regarding Plaintiffs' damages "unnecessary evidence." (*Dempsey*, Dkt. 119-1 at 7). Such evidence would only be unnecessary if a jury's finding on individual liability eliminates the need to determine municipal liability, which the Court has already concluded may not be the case.

All these considerations weigh against granting bifurcation in these matters. In each case, the Court concludes that scheduling "a second trial to address municipal liability to be held weeks or months later . . . would be [an] inefficient, burdensome, and time-consuming endeavor." *Rutherford*, 2023 WL 8676815, at *4.

The Court also notes that judicial economy may arguably be served by resolving factual issues regarding the City's training and policies during the first-scheduled trial in *Dempsey*. The doctrine of issue preclusion "bars litigation of an issue when (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013) (citation omitted). Thus, the findings of the jury in the *Dempsey* matter could potentially have preclusive effect as to the City, which is a party to all these actions, and thus narrow the scope of subsequent trials. *See Luo v. Baldwin Union Free Sch. Dist.*, 677 F. App'x 719, 721 (2d Cir. 2017) ("[C]ollateral estoppel applies even if the subsequent action asserts a different cause of action, or the issue recurs in the context of a different claim.") (internal quotation and citation

- 20 -

omitted); *White v. Pro. Claims Bureau, Inc.*, 284 F. Supp. 3d 351, 359 (E.D.N.Y. 2018) ("The Supreme Court has abandoned the mutuality requirement for collateral estoppel, and has ruled that a plaintiff can use 'offensive collateral estoppel' to 'estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff.'") (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329-33 (1979)); *Green v. Kadilac Mortg. Bankers*, 936 F. Supp. 108, 114 (S.D.N.Y. 1996) ("The Supreme Court has long since removed any doubt that the doctrine of collateral estoppel applies to actions brought under § 1983.") (citing *Allen v. McCurry*, 449 U.S. 90, 104-05 (1980)).

In sum, the Court finds that the judicial economy factor also weighs against bifurcation in these cases. The Court accordingly declines to exercise its discretion to order separate trials on individual liability and municipal liability.

## **CONCLUSION**

For the foregoing reasons, Defendants' motions to bifurcate (*Dempsey*, Dkt. 119; *Gursslin*, Dkt. 140; *McGill*, Dkt. 68; *Preston*, Dkt. 53) are denied.

SO ORDERED.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge


Dated:   Rochester, New York
             November 26, 2025